**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 24 2024

TAMMY H. DOWNS, CLERK

By:_____
DEP CLERK

|  |  |
|---|---|
| **UNITED STATES LIABILITY**<br>**INSURANCE COMPANY,** | ) <br> ) <br> ) |
| *Plaintiff,* | ) <br> ) |
| **v.** | ) <br> ) |
| **STONE COUNTY INSURANCE**<br>**AGENCY, INC.**<br>**Serve Registered Agent**<br>**Dustin R. Nichols**<br>**2013 East Main Street**<br>**Mountain View, AR 72560** | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| **and** | ) <br> ) |
| **ASE GRO LINDLAND and OLAV**<br>**LINDLAND**<br>**102 Kong Harald**<br>**Mountain View, AR 72560** | ) <br> ) <br> ) <br> ) |
| *Defendants.* | ) <br> ) |

Case No. 4:24-cv-614-KGB

This case assigned to District Judge *Baker*
and to Magistrate Judge *Kuen*

**COMPLAINT FOR DECLARATORY JUDGMENT**

**COMES NOW** Plaintiff United States Liability Insurance Company ("USLI"), by and through undersigned counsel and pursuant to 28 U.S.C. § 2201, and for its Complaint for Declaratory Judgment against Defendants Stone County Insurance Agency, Inc. ("Stone County Insurance"), Ase Gro Lindland, and Olav Lindland[1] states as follows:

**PARTIES, JURISDICTION & VENUE**

1.    USLI is a Nebraska insurance company with its principal place of business in Wayne, Pennsylvania such that it is a citizen of the State of Nebraska and Pennsylvania.

---

[1] Ase Gro Lindland and Olav Lindland are collectively referred to as "the Lindlands."

2.       Stone County Insurance is an Arkansas corporation with its principal place of business at 2013 East Main Street, Mountain View, AR 72560, and is a citizen of Arkansas. Stone County Insurance may be served process through its registered agent Dustin Nichols at the address stated above.

3.       The Lindlands are citizens of Norway. The Lindlands also own property in Stone County, Arkansas. The Lindlands may be served process at their Arkansas address stated above.

4.       The Lindlands asserted claims against Stone County Insurance in a lawsuit styled *Lindland, et al. v. Stone County Insurance Agency, Inc., et al.*, Case No. 69CV-23-12, in the Circuit Court of Stone County, Arkansas (the "underlying lawsuit"). A copy of the Complaint from the underlying lawsuit containing those claims is attached hereto as Exhibit 1.

5.       This action is within the subject matter jurisdiction of this Court pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000 exclusive of interest and costs and the action is between citizens of different states and citizens of a foreign state in that USLI is a citizen of Nebraska and Pennsylvania, Stone County Insurance is a citizen of Arkansas, and the Lindlands are citizens of Norway.

6.       This action is within the subject matter jurisdiction of this Court pursuant to 28 U.S.C. § 2201(a) because this complaint seeks a judicial declaration of the rights, statuses, and legal relations of and among the parties with regard to a contract of insurance and because an actual case and controversy of a justiciable nature exists among the parties.

7.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Stone County Insurance is a resident of this district and a substantial part of the events giving rise to this dispute occurred in said District.

2

## FACTS COMMON TO ALL COUNTS

### A. Underlying Lawsuit Allegations

8.     In the underlying lawsuit, the Lindlands alleged that they owned a home in Stone County, Arkansas—spending part of the year in Arkansas and the majority of the year in Norway. *See Complaint, paragraphs 3-4, attached as Exhibit 1.*

9.     In the underlying lawsuit, the Lindlands alleged that they had a long-standing business relationship with Stone County Insurance in which Stone County Insurance obtained homeowners insurance for the Lindlands' Arkansas home and "that it was the habit and custom of [the Lindlands] to take their credit card to [Stone County Insurance] for payment of the policy premiums over the years." *See Complaint, paragraph 5-6, attached as Exhibit 1.*

10.     In the underlying lawsuit, the Lindlands alleged that on May 4, 2021 Ase Gro Lindland sent Stone County Insurance her credit card number so that Stone County Insurance could pay the Lindlands' insurance premiums.  The Lindlands alleged that Stone County Insurance through Stone County Insurance's agent, servant, or employee Janet Nesbitt assumed the duty to pay the Lindlands' homeowners premiums and made two payments on the homeowners insurance premiums with the Lindlands' credit card. *See Complaint, paragraphs 10-11, attached as Exhibit 1.*

11.     In the underlying lawsuit, the Lindlands alleged that Stone County Insurance told the Lindlands that it had paid the homeowners insurance premiums for one year. *See Complaint, paragraph 13, attached as Exhibit 1.*

12.     In the underlying lawsuit, the Lindlands alleged that Stone County Insurance only paid six months of homeowners insurance premiums, failed to pay the next six months of

homeowners insurance premiums, and failed to inform the Lindlands of the nonpayment. *See Complaint, paragraph 17, attached as Exhibit 1.*

13.    In the underlying lawsuit, the Lindlands alleged that their homeowners insurance policy expired, cancelled, or terminated on October 27, 2021. *See Complaint, paragraph 18, attached as Exhibit 1.*

14.    In the underlying lawsuit, the Lindlands alleged that a fire occurred at their home on March 30, 2022. *See Complaint, paragraph 17, attached as Exhibit 1.*

15.    In the underlying lawsuit, the Lindlands alleged that the Lindlands' homeowners' insurer denied coverage for their claim for damages from the fire "because the policy had been cancelled on October 27, 2021 for nonpayment of the second six months premium." *See Complaint, paragraph 20, attached as Exhibit 1.*

16.    In Count 1 of the underlying lawsuit, the Lindlands alleged that Stone County Insurance assumed a duty to pay the premiums on the Lindlands' homeowners insurance policy using the Lindlands' credit card but failed to pay the second six months of premiums after one bill. *See Complaint, Count 1, attached as Exhibit 1.*

17.    In Count 2 of the underlying lawsuit, the Lindlands alleged that an oral contract was created between the Lindlands and Stone County Insurance for Stone County Insurance to pay plaintiffs' premiums using plaintiffs' credit card as a means for payment but Stone County Insurance breached the oral contract by failing to pay six months of premiums after advising the Lindlands that they had paid a year of premiums. *See Complaint, Count 2, attached as Exhibit 1.*

**B. The USLI Policy**

18.    USLI issued Policy No. IAE1554936A (the "Policy") to Stone County Insurance with a Policy Period of May 11, 2022 to May 11, 2023.  The Policy is attached hereto as Exhibit 2 and incorporated by reference.

19.    The Policy was issued to Named Insured "Stone County Insurance Agency, Inc."

20.    The Policy contains a "Insurance Agents and Brokers Professional Liability Coverage Form."  The Coverage Form provides:

I.    INSURING AGREEMENTS
A.    The **Company** will pay on behalf of an **Insured**, **Loss** excess of the Deductible not exceeding the Limit of Liability shown on the Policy Declarations for which this coverage applies that an **Insured** shall become legally obligated to pay because of **Claims** first made against an **Insured** during the **Policy Period** or if applicable, during the Extended Reporting Period, for **Wrongful Acts** or **Wrongful Acts** resulting in **Personal Injury**. Coverage only applies for **Wrongful Act**(s) or **Wrongful Act**(s) resulting in **Personal Injury** occurring prior to the Coverage Form expiration or if applicable, effective date of cancellation or non-renewal and arising solely out of an **Insured**'s duties on behalf of the **Named Insured**.
B.    The **Company** has the right and duty to defend any **Claim** to which this Insurance applies, even if the allegations of the **Claim** are groundless, false or fraudulent.
    …
III.    DEFINITIONS
    …
B.    "**Claim**" means:
    1. any written notice received by any **Insured** that any person or entity intends to hold such **Insured** responsible for a **Wrongful Act**; or
    2. any judicial or administrative proceeding initiated against any **Insured** seeking to hold such **Insured** responsible for a **Wrongful Act**, including any appeal therefrom.
    A **Claim** shall be considered first made when an **Insured** or any legal representative or agent of an **Insured** first received notice of a **Claim**.
    …
G.    "**Loss**" means damages and settlements, but does not include:
    1. punitive or exemplary damages, that portion of any multiplied damage award which exceeds the amount multiplied, criminal or civil fines or penalties imposed by law, taxes, and matters deemed uninsurable under the law pursuant to which this Coverage Form shall be construed, nor,

2. the return of or dispute over, in whole or in part, commission(s) or brokerage fees, costs and expenses, previously paid, retained, or due.

...

IV.    EXCLUSIONS
The **Company** shall not be liable to make payment for **Loss** or **Claim Expenses** in connection with any **Claim** made against an **Insured** arising out of, directly or indirectly resulting from or in consequence of or in any way involving :

D.    the commingling of, or inability or failure to pay, collect, safeguard or return any money;

*See Policy, Form IAE (12-10), Pages 1-3 of 8, attached hereto as Exhibit 2.*

## C. Stone County Insurance Agrees to a Consent Judgment Entered Against It.

21.    Stone County Insurance sought coverage of defense and indemnity of the underlying lawsuit from USLI under the Policy.

22.    On or about June 19, 2024, the Circuit Court of Stone County, Arkansas entered a Consent Judgment in favor of the Lindlands against Stone County Insurance. *See Consent Judgment, attached hereto as Exhibit 3.*

23.    The Consent Judgment was signed as "APPROVED" by the Lindlands' attorney and Stone County Insurance's attorney. *See Consent Judgment, attached hereto as Exhibit 3.*

24.    The Consent Judgment states that the Lindlands had a long-standing business relationship with Stone County Insurance in which Stone County Insurance obtained homeowners insurance for the Lindlands' Arkansas home and "that it was the habit and custom of [the Lindlands] to take their credit card to [Stone County Insurance] for payment of the policy premiums over the years." *See Consent Judgment, paragraph 6-7, attached as Exhibit 3.*

25.    The Consent Judgment states that on or about May 4, 2021 Ase Gro Lindland sent Stone County Insurance's agent, servant, or employee Janet Nesbitt the Lindlands' credit card

number so that Stone County Insurance could pay the Lindlands' homeowners insurance premiums. *See Consent Judgment, paragraph 11, attached as Exhibit 3.*

26.     The Consent Judgment states that Stone County Insurance through Janet Nesbitt assumed the duty to pay the Lindlands' premiums and made two payments on the homeowners insurance premiums with the Lindlands' credit card. *See Consent Judgment, paragraph 12, attached as Exhibit 3.*

27.     The Consent Judgment states that Stone County Insurance told the Lindlands that it had paid for a year's worth of coverage but that Stone County Insurance only paid for six months of coverage. *See Consent Judgment, paragraphs 13-14, attached as Exhibit 3.*

28.     The Consent Judgment states that the Lindlands' insurance policy expired, cancelled, or terminated on October 27, 2021. *See Consent Judgment, paragraph 18, attached as Exhibit 3.*

29.     The Consent Judgment found that a fire occurred at the Lindlands' home on March 30, 2022. *See Consent Judgment, paragraph 19, attached as Exhibit 3.*

30.     The Consent Judgment found that the Lindlands' homeowners' insurer denied coverage for the fire "because the policy had been cancelled on October 27, 2021 for nonpayment of the second six months premium." *See Consent Judgment, paragraph 20, attached as Exhibit 3.*

31.     The Consent Judgment found "that as a proximate cause of [Stone County Insurance's] negligence, [the Lindlands] suffered damages in the loss of their home in the amount of $334,000.00, the amount of coverage for damage to the home; $176,472.00 for the loss of their personal property, and $8,100.00 for cost of accommodations which they had to pay when they visited Stone County after the fire loss; that additionally plaintiffs were entitled to prejudgment interest at the rate of 6% per annum from March 30, 2022, the date of the fire loss, until the date

7

of this judgment or the sum of $68,110.52." *See Consent Judgment, paragraph 21, attached as Exhibit 3.*

32.     The Consent Judgment found "that [the Lindlands] are entitle [sic] to a total judgment from and against defendant Stone County Insurance Agency, Inc. in sum of $586,682.52." *See Consent Judgment, paragraph 22, attached as Exhibit 3.*

33.     The Lindlands have made a demand for payment from USLI for payment of the Consent Judgment.

**COUNT I**
**DECLARATORY JUDGMENT – COVERAGE IS EXCLUDED BY THE FAILURE TO PAY EXCLUSION**

34.     USLI incorporates as if fully set forth herein the allegations contained in paragraphs 1 through 33, above.

35.     Coverage is excluded by the Failure to Pay Exclusion in the Policy for any claims by the Lindlands against Stone County Insurance in the underlying lawsuit.  The Failure to Pay Exclusion expressly provides:

> IV. EXCLUSIONS
> The **Company** shall not be liable to make payment for **Loss** or **Claim Expenses** in connection with any **Claim** made against an **Insured** arising out of, directly or indirectly resulting from or in consequence of or in any way involving :ving:
>
> D.  the commingling of, or inability or failure to pay, collect, safeguard or return any money;

36.     The underlying lawsuit and Consent Judgment are a Loss or Claim Expenses in connection with a Claim against an Insured arising out of, directly or indirectly resulting from or in consequence of or in any way involving the failure to pay money because the Lindlands allege that Stone County Insurance assumed and had a duty to pay the Lindlands' homeowners insurance premiums but failed to pay the Lindlands' homeowners insurance premiums such that the

Lindlands suffered damages. Accordingly, coverage is excluded by the Failure to Pay Exclusion in the USLI Policy.

37.    USLI owed no duty to defend Stone County Insurance for the underlying lawsuit pursuant to the terms of the Policy set forth above and owes no duty to indemnify Stone County Insurance with respect to the Consent Judgment entered in the underlying lawsuit.

## **PRAYER FOR RELIEF**

**WHEREFORE,** United States Liability Insurance Company respectfully prays for the following relief from the Court:

A.    Enter judgment in favor of USLI and against defendants on Count I of this Complaint;

B.    Declare that USLI does not owe and has never owed Stone County Insurance a duty to defend it against the claims asserted by the Lindlands in the underlying lawsuit due to the Failure to Pay Exclusion in the USLI Policy;

C.    Declare that USLI does not owe a duty to indemnify Stone County Insurance for the claims asserted by the Lindlands in the underlying lawsuit or to pay the Consent Judgment entered in the underlying lawsuit due to the Failure to Pay Exclusion in the USLI Policy;

D.    Grant such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

**HALL BOOTH SMITH, P.C.**

Todd Wooten, AR Bar No. 94034
200 River Market Avenue, Suite 500
Little Rock, AR  72201
Telephone: 501-214-3499
Fax:  501-604-5566
Email:  *twooten@hallboothsmith.com*

and

**BAKER STERCHI**
**COWDEN & RICE, LLC**

Scott D. Hofer
(Admitted in E.D. Ark. / MO #44587)
Kevin D. Brooks
(Admitted in E.D. Ark. / MO #57627)
2400 Pershing Road, Suite 500
Kansas City, MO  64108
Telephone: (816) 471-2121
Fax: (816) 472-0288
Email:  *shofer@bakersterchi.com*
Email:  *kbrooks@bakersterchi.com*

*Attorneys for Plaintiff*

IN THE CIRCUIT COURT OF STONE COUNTY, ARKANSAS

ASE GRO LINDLAND and OLAV LINDLAND          PLAINTIFFS

VS.                    CASE NO. 69CV-23-___

STONE COUNTY INSURANCE
AGENCY, INC. and JANET NESBITT              DEFENDANTS

## COMPLAINT

Come now Ase Gro Lindland and Olav Lindland, plaintiffs herein, and for their complaint from and against Stone County Insurance Agency, Inc. and Janet Nesbitt, defendants herein, hereby state and allege as follows:

1. That plaintiffs are residents and citizens of Norway; that defendant Stone County Insurance Agency, Inc. is a corporation organized and existing under the laws of the State of Arkansas with its principal place of business in Stone County, Arkansas; that defendant Janet Nesbitt is a resident of Stone County, Arkansas; that the transactions and occurrences on which this action is based occurred in Stone County, Arkansas.

2. That defendant Janet Nesbitt is an agent, servant or employee of defendant Stone County Insurance Agency, Inc., and at all times relevant to this complaint was acting within the course and scope of her agency, servanthood or employment; that defendant Stone County Insurance Agency, Inc. is responsible for the actions and inactions of defendant Janet Nesbitt under the doctrine of respondent superior.

FILED
IN STONE COUNTY, ARKANSAS
FEB 15 2023
AT 11:00 O'CLOCK A. M.
ANGIE HIGGINS, CIRCUIT CLERK
BY ___ DC

**EXHIBIT**

**1**

3. That plaintiffs owned property in Stone County, Arkansas since 2008; that the property of plaintiffs had a mailing address or physical location address of 102 Kong Harald, Mountain View, Arkansas 72560, and plaintiffs had a home located on their property which was constructed in 2009-2010.

4. That plaintiffs spent part of each year at their residence in Stone County and the majority of the year in Norway.

5. That plaintiffs had a long-standing business relationship with defendants who are independent insurance agents and obtained homeowners policies from defendants which insured their premises, home, personal property, and other items on their property.

6. That it was the habit and custom of plaintiffs to take their credit card to defendants for payment of the policy premiums over the years.

7. That prior to the policy at issue in this matter, defendants have obtained coverage for plaintiffs through Metropolitan Property and Casualty Insurance Company or some other subsidiary of MetLife Auto & Home.

8. That around the time of the annual policy renewal in early May, 2021, defendants informed plaintiffs that henceforth the coverage would be provided by the Farmers Insurance Group or one of its subsidiaries; that from information which plaintiffs have recently received, it is their information and belief that actually the Farmers Insurance Group had bought out the MetLife Auto & Home and its subsidiaries or the companies involved; that nevertheless they were under

the impression that their insurance carrier would change to Farmers Insurance Group at the beginning of the new policy on May 4, 2021.

9. That in the period of time around the time the policy was renewing, plaintiffs could not come to the United States because of travel restrictions due to the Covid pandemic, so they were in Norway and could not get to the United States much less their residence in Stone County; and that they were not receiving mail addressed to their Stone County residence.

10. That on or about May 4, 2021 plaintiff Ase Gro Lindland sent an email to defendant Janet Nesbitt asking defendant to help her out with the home insurance because the bill was not sent to Norway, and she did not have it; that in that email, she gave defendant Janet Nesbitt the name of the current insurance carrier, their policy number, and their credit card number so that defendants could pay their premium; that additionally plaintiff Ase Gro Lindland was not sure that she could make an online payment directly from Norway.

11. That defendant Janet Nesbitt assumed the duty to pay plaintiffs' premiums and made two payments on the insurance premium with plaintiffs' credit card.

12. That payments were made by defendants on the homeowners insurance company by two credit card payments on May 4, 2021, one in the amount of $726.00 and one in the amount of $725.00; and that defendants said this paid for a year's worth of coverage; that in fact defendants had only paid for 6 months of coverage.

13. That defendant Janet Nesbitt, in email exchanges later that day, told plaintiff Ase Gro Lindland that she had paid the premiums for one year.

14. That as a result of these payments, a homeowners insurance policy by Metropolitan Property and Casualty Insurance Company on Policy No. 0723329230 was issued providing coverage with a term of coverage from May 4, 2021 to 12:01 a.m. Standard Time on May 4, 2022, that a copy of said policy has been marked Exhibit "A", attached hereto, and incorporated herein by reference; that due to a clerical error plaintiff Olav Lindland was listed as "Olva Lindland" on the policies; that plaintiffs did not receive a copy of the policy until Dustin Nichols, a servant, employee or agent of the defendant Stone County Insurance Agency, Inc., gave it to them on April 15 or 16, 2022.

15. That on or about May 5, 2021 Metropolitan Property and Casualty Insurance Company sent a bill requesting a $78.00 payment which they said would be due by May 25, 2021; that this statement was sent to plaintiffs' address in Stone County; that they did not receive it; that it was not in their mailbox when they finally were able to get back to the United States and their residence; and that it is the information and belief of plaintiffs that a copy of was sent to defendants which defendants did not inform them.

16. That at some time prior to October 27, 2021, Farmers Insurance or Metropolitan Property and Casualty Insurance Company mailed a notice to plaintiffs at their Stone County residence address stating that payment for the

second 6 months of the term of the policy was overdue and that the policy would be cancelled and terminated unless payment was received on or before 12:01 a.m. on October 27, 2021; that plaintiffs did not receive this notice in Norway nor was the notice in their mailbox when they returned to the United States at their residence in Stone County; that it is the information and belief of plaintiffs that defendants were sent a copy of the notice and failed to pay the premium or inform plaintiffs after undertaking the duty to be paying the premiums with the plaintiffs' credit card; and that they failed to ever inform plaintiffs or just to pay the next 6 months premium using plaintiffs' credit card.

17. That defendants failed to pay the next 6 months premium on the homeowners insurance policy and failed to inform plaintiffs so that they might try to find some alternate way to make payment.

18. That the policy expired or was cancelled or terminated as of 12:01 a.m. on October 27, 2021.

19. That on or about March 30, 2022 a fire occurred at the residence, and there was a total loss to the home and all contents of the home.

20. That a claim was made on the existing policy, and a notice dated April 13, 2022 was sent to plaintiffs from the Homeowner Operations Field Office of Farmers Insurance denying coverage because the policy had been cancelled on October 27, 2021 for nonpayment of the second six months premium.

21. That insofar as the building, home or residence was a total loss by fire, the provisions of ACA §23-88-101, govern; that the loss of the home has become

by operation of law a liquidated demand for the policy limits in the amount of $334,000 as the same pertains to coverage for damage to property; that this is the amount that the insurance company would have had to pay to plaintiffs had the policy not been cancelled; and that these are damages suffered by plaintiffs due to defendants' actions and inactions.

22. That plaintiffs suffered additional damages in that the coverage of the policy that was cancelled or terminated for loss of personal property was in the amount of $233,800; but that the actual replacement value of plaintiffs' personal property was in the amount of $147,060, which amount would have been payable by the insurance company to plaintiffs had the homeowners policy not been cancelled or terminated and which is the current amount of their damages though the replacement value could change between now and the time this matter is tried.

23. That the homeowners policy also provided coverage for loss of use, which would be the rental cost plaintiffs have incurred in staying in Stone County when they have visited since the date of the fire which at this time would amount to $8,100; that because of the actions and inactions of defendants, this coverage was not available, and plaintiffs have been damaged in that amount as well.

24. That plaintiffs have received total damages as of this time in the amount of $489,160 due to the actions and inactions of defendants.

## COUNT 1

That defendants had assumed a duty to pay the premiums on the plaintiffs' homeowners insurance policy using plaintiffs' credit card.

25. That defendants failed to use ordinary care and failed to pay the second 6 months of premiums but misrepresented to plaintiffs that they had paid for a year of premiums; that additionally defendants failed to use ordinary care to later pay the second 6 months of premiums after one bill and a cancellation notice were received and further failed to inform plaintiffs that these second 6 months premiums had to be paid or the policy would be cancelled and plaintiffs would have no insurance coverage.

26. That as a result of the negligent actions and inactions of defendants, plaintiffs have been damaged in the amount of $489,160 to date.

27. That additionally had defendants paid the premiums as they agreed to do and had the insurance carrier refused payment, plaintiffs would have been entitled to attorney's fee, a 12% penalty and for 6% prejudgment interest; that due to negligent actions and inactions of defendants, plaintiffs would have been damaged in these amounts as well.

## COUNT 2

That an oral contract was created between plaintiffs and defendants for defendants to pay plaintiffs' premiums using plaintiffs' credit card as a means for payment, and defendants would retain the business of plaintiffs and receive a

commission off the premiums; that plaintiffs did what they were required to do under this agreement or oral contract.

28. That defendants breached the agreement or oral contract by failing to pay 6 months of premiums after advising plaintiffs that they had paid a year of premiums.

29. That due to this breach of contract, plaintiffs suffered damages in the amount of $489,160 to date.; that by virtue of ACA §16-22-308 plaintiffs are entitled to their costs and attorney's fees from defendants.

WHEREFORE, plaintiffs Ase Gro Lindland and Olav Lindland pray that they be awarded judgment from and against Stone County Insurance Agency, Inc., and Janet Nesbitt, defendants herein, jointly and severally, in the amount of $489,160 to date as well as for their costs and attorney's fees, a 12% penalty and prejudgment interest at the rate of 6% per annum.

ASE GRO LINDLAND and
OLAV LINDLAND, PLAINTIFFS

BY: _____
BLAIR ARNOLD (78004)
MURPHY, THOMPSON, ARNOLD
& SKINNER
ATTORNEYS AT LAW
P.O. BOX 2595
BATESVILLE, AR 72503
P: 870-793-3821
F: 870-793-3815
E: blairarnoldm@gmail.com

IAE1554936
Renewal of Number

POLICY DECLARATIONS

# United States Liability Insurance Company
### 1190 Devon Park Drive, Wayne, Pennsylvania 19087
A Member Company of United States Liability Insurance Group

Home Office Copy
Direct Bill Policy

## No. IAE1554936A

NAMED INSURED AND ADDRESS:
STONE COUNTY INSURANCE AGENCY, INC.
202 HERITAGE DRIVE
MOUNTAIN VIEW, AR 72560

POLICY PERIOD: (MO. DAY YR.)   From:  05/11/2022  To:  05/11/2023

12:01 A.M. STANDARD TIME AT YOUR
MAILING ADDRESS SHOWN ABOVE

BUSINESS DESCRIPTION:  Insurance Agents

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE
WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.

PREMIUM

Insurance Agents and Brokers Professional Liability
Coverage Part

TOTAL:

**EXHIBIT**

**2**

Coverage Form(s) and Endorsement(s) made a part of this policy at time of issue
### See Endorsement EOD (1/95)

Agent:   GRAHAM-ROGERS (3832)
         501 SE Frank Phillips Blvd.
         Bartlesville, OK  74003

Broker:  Stone County Insurance Agency, Inc.
         202 Heritage Drive
         Mountain View, AR  72560

Issued:  04/26/2022 7:29 AM

By: _____
              Authorized Representative

UPD (08-07)

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS,
COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF,
COMPLETE THE ABOVE NUMBERED POLICY.

## EXTENSION OF DECLARATIONS

Policy No. IAE1554936A

Effective Date:   05/11/2022
12:01 AM STANDARD TIME AT YOUR MAILING ADDRESS

### FORMS AND ENDORSEMENTS

The following forms apply to the Insurance Agents and Brokers Professional Liability coverage part

| Endt# | Revised | Description of Endorsements |
|---|---|---|
| IAE | 12/10 | Insurance Agents and Brokers Professional Liability Coverage Form |
| IAE AR M | 12/10 | Arkansas State Amendatory Endorsement |
| IAE-229 | 12/10 | Premium Audit Provision Endorsement |
| Jacket | 07/19 | Policy Jacket |
| NTP AR | 03/20 | Arkansas Notice to Policyholders |
| PROF-003 | 11/01 | War or Terrorism Exclusion |

**INSURANCE AGENTS & BROKERS PROFESSIONAL LIABILITY COVERAGE PART DECLARATIONS**

PLEASE READ YOUR POLICY CAREFULLY.

THIS IS A CLAIMS MADE POLICY COVERAGE FORM AND UNLESS OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS FORM IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE DURING THE POLICY PERIOD, OR THE EXTENSION PERIOD, IF APPLICABLE.  DEFENSE COSTS SHALL BE APPLIED AGAINST THE DEDUCTIBLE.

No.  IAE1554936A                                  Effective Date:  05/11/2022
                                                                12:01 AM STANDARD TIME

## Professional Liability

| | | |
|---|---|---|
| LIMITS OF LIABILITY | $1,000,000 | EACH CLAIM |
| | $2,000,000 | ANNUAL AGGREGATE |
| DEDUCTIBLE: | $2,500 | EACH CLAIM |
| PREMIUM: | $2,735 | |
| RETROACTIVE DATE: | Full Prior Acts | |

Coverage Form(s)/Part(s) and Endorsement(s) made a part of this policy at time of
   See Endorsement EOD (01/95)

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**This page has been intentionally left blank.**

# Insurance Agents and Brokers Professional Liability Coverage Form

NOTICE: This is a Claims-Made and reported Coverage Form. This Coverage Form covers only those **Claims** first made against an **Insured** during the **Policy Period** or Extended Reporting Period, if purchased, and reported to the **Company** as soon as practicable during the **Policy Period** but within sixty (60) days after expiration, cancellation or non-renewal of the **Policy Period** or no later than the last day of an Extended Reporting Period, if purchased. **Claim Expenses** shall be applied against the Deductible.

In this Coverage Form and the policy to which it is attached, "you" and "your" refer the **Named Insured** as defined. "We", "us", and "our" refer to the **Company** listed in the Policy Declarations.

In consideration of the payment of the premium and reliance upon all statements made and information furnished to the **Company**, including the statements made in the **Application** (and all attachments and materials submitted therewith) and subject to all the provisions of this Coverage Form, the **Company** agrees as follows:

## I. INSURING AGREEMENTS

A. The **Company** will pay on behalf of an **Insured**, **Loss** excess of the Deductible not exceeding the Limit of Liability shown on the Policy Declarations for which this coverage applies that an **Insured** shall become legally obligated to pay because of **Claims** first made against an **Insured** during the **Policy Period** or if applicable, during the Extended Reporting Period, for **Wrongful Acts** or **Wrongful Acts** resulting in **Personal Injury**. Coverage only applies for **Wrongful Act**(s) or **Wrongful Act**(s) resulting in **Personal Injury** occurring prior to the Coverage Form expiration or if applicable, effective date of cancellation or non-renewal and arising solely out of an **Insured**'s duties on behalf of the **Named Insured**.

B. The **Company** has the right and duty to defend any **Claim** to which this Insurance applies, even if the allegations of the **Claim** are groundless, false or fraudulent.

## II. FULL PRIOR ACTS COVERAGE PROVISION

Coverage shall apply to any **Claim** made against an **Insured** for a **Wrongful Act** arising solely out of an **Insured**'s duties on behalf of the **Named Insured** and prior to the expiration date of this Coverage Form or the effective date of cancellation or non-renewal of this Coverage Form, if applicable, provided that the **Claim** is first made during the **Policy Period**, or the Extended Reporting Period, if applicable.

However, coverage shall not apply to any **Claim** based upon or arising out of any **Wrongful Act** or circumstance which could give rise to a **Claim** of which any **Insured** had knowledge, or otherwise had a reasonable basis to anticipate might result in a **Claim**, prior to the earlier of:

A. the inception date of this Coverage Form; or

B. the inception date of the first Coverage Form of this type the **Company** has issued to the **Named Insured**, provided the **Company** has written continuous coverage for the **Named Insured** from such date to the Inception date of this Coverage Form.

## III. DEFINITIONS

The following defined words have a special meaning and are highlighted throughout this Coverage Form by bold print.

A. "**Application**" means:

1. An **Application**(s) and any material submitted for this Coverage Form, and

2. An **Application**(s) and any material submitted for all previous Coverage Forms issued by the **Company** providing continuous coverage until the inception date of this Coverage Form.

The content of 1. and 2. above are incorporated by reference in this Coverage Form as if physically attached hereto.

B. "**Claim**" means:

1. any written notice received by any **Insured** that any person or entity intends to hold such **Insured** responsible for a **Wrongful Act**; or

2. any judicial or administrative proceeding initiated against any **Insured** seeking to hold such **Insured** responsible for a **Wrongful Act**, including any appeal therefrom.

A **Claim** shall be considered first made when an **Insured** or any legal representative or agent of an **Insured** first received notice of a **Claim**.

C.  "**Claim Expenses**" means reasonable and necessary legal fees and expenses incurred by the **Company** or by any attorney designated by the **Company** to defend any **Insured** and all other fees, costs, costs of attachment or similar bonds (without any obligation on the part of the **Company** to apply for or furnish such bonds) resulting from the investigation, adjustment, defense and appeal of a **Claim** but does not include salaries, wages, overhead or benefits expenses of any **Insured**.

D.  "**Company**" means the insurer identified in the Policy Declarations.

E  "**Domestic Partner**" means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law.

F.  "**Insured**" means:

1.  the individual, partnership, corporation limited liability company, limited liability partnership or other entity specified as the **Named Insured** in the Policy Declarations and shall include any present or future principal, owner, partner, director, officer, trustee, stockholder, member or employee thereof while acting within the scope of their duties as such;

2.  any former principal, owner, partner, officer, director, stockholder, trustee, member or employee of the **Named Insured** but only while having acted within the scope of their duties as such prior to the date of separation or retirement from the **Named Insured**;

3.  any independent contractor of the **Named Insured** but only as respects **Wrongful Acts** or **Wrongful Acts** resulting in **Personal Injury** committed while acting for or on behalf of the **Named Insured** in connection with the operations of the **Named Insured**; and

4.  in the event of death, incompetency, insolvency or bankruptcy of any **Insured**, such **Insured**'s legal representative while acting within the scope of his or her duties as such.

G.  "**Loss**" means damages and settlements, but does not include:

1.  punitive or exemplary damages, that portion of any multiplied damage award which exceeds the amount multiplied, criminal or civil fines or penalties imposed by law, taxes, and matters deemed uninsurable under the law pursuant to

which this Coverage Form shall be construed, nor,

2.  the return of or dispute over, in whole or in part, commission(s) or brokerage fees, costs and expenses, previously paid, retained, or due.

H.  "**Named Insured**" means the NAMED INSURED stated in the Policy Declarations.

I.  "**Personal Injury**" means:

1.  wrongful entry or eviction or other invasion of private occupancy; or

2.  the publication or utterance of a libel or slander or other defamatory or disparaging material, including libel, slander, defamation or disparagement of the goods, products or services of a third-party; or

3.  a publication or an utterance constituting an invasion, infringement or interference with a third-party's right of privacy or publicity.

J.  "**Policy Period**" means the period from the effective date of this Coverage Form set forth in the Policy Declarations to the expiration date or the effective date of cancellation or non-renewal date, if any.

K.  "**Wrongful Act**" means any actual or alleged negligent act, error or omission of an **Insured** arising solely from that **Insured**'s services rendered for others as an insurance agent, insurance broker, insurance general agent, surplus lines insurance broker, insurance consultant, employee insurance benefits counselor, estate insurance planner, insurance claims administrator, insurance appraiser, insurance premium financier or notary public. The same **"Wrongful Act"**, an interrelated series of **Wrongful Acts** or a series of similar or related **Wrongful Acts** by one or more **Insureds** shall be deemed to be one **Wrongful Act** and to have commenced at the time of the earliest **Wrongful Act**.

IV.  EXCLUSIONS

The **Company** shall not be liable to make payment for **Loss** or **Claim Expenses** in connection with any **Claim** made against an **Insured** arising out of, directly or indirectly resulting from or in consequence of or in any way involving :

A.  conduct by any person that is criminal, fraudulent, dishonest or with the intent to cause damage or the gaining by any **Insured** of any personal profit, remuneration or

advantage to which an **Insured** was not legally entitled; or

B.  any **Claim** made by or on behalf of any **Insured** against any other **Insured**; or

C.  any actual or alleged bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; however, this exclusion shall not apply to a **Claim** resulting from any actual or alleged failure of an **Insured** to effect or maintain any insurance or bond to cover such losses, in whole or in part, or on any particular terms or with any particular limits; or

D.  the commingling of, or inability or failure to pay, collect, safeguard or return any money; or

E.  liability assumed by any **Insured** under contract, unless the **Insured** would have been legally liable in the absence of such contract; or

F.  any actual or alleged **Insured**'s activities in a fiduciary capacity as respects any employee benefit or pension plan under the Employee Retirement Income Security Act of 1974 (ERISA) or any amendments thereof or similar state, federal or local statutory laws or common law; or

G.  any rendering or failure to render services as an attorney, accountant, actuary, tax preparer or tax consultant, real estate broker, security broker, travel agent, security dealer, mortgage broker, financial planner, or any other professional service unless such professional services are specifically insured hereunder by endorsement and an additional premium paid; or

H.  Services involving:

1.  placement of or failure to place any reinsurance;

2.  performance of or failure to perform any actuarial service;

3.  advice related to mergers and acquisitions;

4.  structured settlement annuities; or

5.  any non-insured pension, welfare or other benefit plan (non-insured means the funding vehicle of the plan is other than insurance or an annuity(ies) issued by an insurance company); or

I.  any actual or alleged violation of any securities, anti-trust, restraint of trade, unfair trade practices, consumer protection, or other

similar law by any person, including but not limited to any **Insured**; or

J.  non-pecuniary relief; or

K.  notarization or certification of a signature of a person unless that person or someone claiming to be that person physically appeared before an **Insured** at the time of such notarization or certification; or

L.  placement of a risk or an insurance or reinsurance contract, policy or other risk transfer mechanism, device or funding vehicle with any insurance company, reinsurer, self-insured trust, group insurance trust, risk retention group, joint underwriting association or other risk assuming entity that is not rated B+ or higher by A.M. Best Company at the time of placement and

1.  becomes insolvent or bankrupt; or

2.  is placed in receivership, rehabilitation, or liquidation proceedings; or

3.  fails to meet all or part of any legal or financial obligation.

Such **Claim** is not covered by this Coverage Form regardless of whether the placement is alleged to have occurred alone, in combination with, or in a sequence with any **Wrongful Act** or legal obligation which is covered by this Coverage Form; or

M.  the establishment, ownership, operation, administration or insolvency of any health maintenance organization, preferred provider organization, self insurance program; or risk retention and risk purchasing group formed under Federal law and any amendment thereto; or

N.  prior or pending litigation, administrative, disciplinary or regulatory proceeding, **Claim**, **Loss**, demand, arbitration, decree, or judgment of which any **Insured** had notice before the effective date of this Coverage Form, or any fact, circumstance, event, situation, or **Wrongful Act** which before the effective date of this Coverage Form was the subject of any notice to any **Insured**; or any future **Claims** or litigation based upon such prior actions or proceedings or derived from the same or essentially the same actual or alleged facts;

provided that, if this Coverage Form is a renewal of a Coverage Form(s) previously issued by the **Company** and if the coverage provided by the **Company** was continuous from the effective date of the first such other

Coverage Form to the effective date of this Coverage Form, the reference in this exclusion to "effective date" will mean the effective date of the first Coverage Form under which the **Company** first provided continuous coverage to the **Named Insured**; or

O. any actual or alleged refusal to employ, termination of employment, or employment related coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or discrimination of employment, or other employment related practices, policies, acts or omissions; or

P. the placement of and/or failure to place a risk or an insurance or reinsurance contract, policy or other risk transfer mechanism, device or funding vehicle on behalf of any other insurance agent or broker who is not an **Insured**; or

Q. the actual, alleged or threatened discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, noise, waste materials, or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, whether or not such actual, alleged or threatened discharge, dispersal, release or escape is sudden, accidental or gradual in nature, or any cost or expense arising out of any request, demand, or order that any **Insured** or others test for, monitor, clean up , remove, contain, treat, detoxify or neutralize any pollutants; or

R. any radioactive, toxic or explosive properties of nuclear material which includes, but is not limited to, source material, "special nuclear material", and "by product material" as those terms are defined in the Atomic Energy Act of 1954 and any amendments thereto and any similar provisions by any federal, state of local statutory or common law.

## V DEFENSE AND SETTLEMENT

A. The **Company**, as it deems expedient, has the right to investigate, adjust, defend, appeal, and with the consent of the first **Named Insured** shown in the Declarations, negotiate the settlement of any **Claim** for **Loss** whether within or above the Deductible. If the **Named Insured** refuses to consent to a settlement recommended by the **Company**, the **Named Insured** shall thereafter be obligated to negotiate or defend such **Claim** independently of the **Company**. Subject to the Limit of

Liability, the liability of the **Company** for such **Claim** for **Loss** is limited to the amount in excess of the Deductible which the **Company** would have contributed to the settlement had the first **Named Insured** shown in the Declarations consented to settlement at that time plus **Claims Expenses** covered by the Coverage Form incurred up to the date of such refusal to settle.

B. All **Insureds** agree to cooperate with the **Company** on all **Claims**, and provide such assistance and information as the **Company** may reasonably request. Upon the **Company**'s request, any **Insured** shall submit to examination and interrogation by a representative of the **Company**, under oath if required, and shall attend hearings, depositions, trials and shall assist in the conduct of suits, including but not limited to effecting settlement, securing and giving evidence, obtaining the attendance of witnesses, giving written statements to the **Company**'s representatives and meeting with such representatives for the purpose of investigation and/or defense, all of the above without charge to the **Company**. All **Insured**'s further agree not to take any action which may increase any **Insured**'s or the **Company**'s exposure for **Claim Expenses** or **Loss**.

C. **Insureds** shall execute all papers required and shall do everything that may be necessary to secure and preserve any rights of indemnity, contribution or apportionment which any **Insured** or the **Company** may have, including the execution of such documents as are necessary to enable the **Company** to bring suit in any **Insured**'s name, and shall provide all other assistance and cooperation which the **Company** may reasonably require.

D. No **Insured** shall demand or agree to arbitration of any **Claim** without the written consent of the **Company**. No **Insured**'s shall, except at personal cost, make any offer or payment, admit any liability, settle any **Claim**, assume any obligation, or incur any expense without the **Company**'s written consent.

## VI. LIMITS OF LIABILITY AND DEDUCTIBLE

Regardless of the number of **Insureds** under this Coverage Form, **Claims** made or brought on account of **Wrongful Act**(s) or otherwise, the **Company**'s liability is limited as follows:

A. The Limit of Liability specified in the Policy Declarations as ANNUAL AGGREGATE shall

be the maximum liability for **Loss** for all **Claims**.

B. The Limit of Liability specified in the Policy Declarations as the Limit for EACH CLAIM shall be the maximum liability for **Loss** for each Claim.

C. **Claims Expenses** shall be in addition to the LIMITS OF LIABILITY as shown in the Policy Declarations.

D. The Deductible amount stated in the Policy Declarations shall apply to **Loss** and **Claim Expenses** and shall apply to each and every **Claim**. The **Company** shall only be liable to pay, subject to the Limits of Liability provisions stated above, for **Loss** plus **Claim Expenses** in excess of such Deductible, and such Deductible shall not be insured under this Coverage Form.

E. The Limit of Liability for the Extended Reporting Period, if applicable, shall be part of and not in addition to the Limit of Liability specified in the Policy Declarations.

F. **Claims** based upon or arising out of the same **Wrongful Act**, interrelated **Wrongful Acts**, or a series of similar or related **Wrongful Acts** shall be considered a single **Claim** subject to one **Claim** Limit and shall be considered first made during the **Policy Period** or Extended Reporting Period, if applicable, in which the earliest **Claim** arising out of such **Wrongful Act**(s) was first made and all **Loss** from such **Claims** shall be subject to the one Limit of Liability that applies to such earliest **Claim**.

G. The Limits of Liability of this Coverage Form apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, starting with the beginning of the **Policy Period** shown in the Policy Declarations, unless the **Policy Period** is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Liability.

## VII. EXTENDED REPORTING PERIOD

A. If the Coverage Form expires, is cancelled or non-renewed for any reason other than non-payment of premium, the first **Named Insured** shown in the Declarations shall have the right to purchase an Extended Reporting Period to report to the **Company** as soon as practicable, during the Extended Reporting Period any

**Claim**(s) which may be first made against an **Insured** during the twelve (12) months, or twenty-four (24) months or thirty-six (36) months after the effective date of such expiration, cancellation or non-renewal (depending upon the Extended Reporting Period purchased). An Extended Reporting Period shall only apply to a **Wrongful Act** committed before the date of the Coverage Form expiration, cancellation or non-renewal. For the purpose of this clause, any change in premium terms or terms on renewal shall not constitute a refusal to renew.

B. The additional premium for the Extended Reporting Period shall be sixty-five percent (65%) of the annual premium set forth in the Policy Declarations for the twelve (12) month period; one hundred percent (100%) of the annual premium set forth in the Policy Declarations for the twenty-four (24) month period; and one hundred twenty-five percent (125%) of the annual premium set forth in the Policy Declarations for the thirty-six (36) month period. The Extended Reporting Period begins on the expiration date or the effective date of cancellation or non-renewal of the Coverage Form. The first **Named Insured** shown in the Declarations must notify the **Company** in writing of their wish to purchase an Extended Reporting Period and must pay the additional premium due no later than sixty (60) days after the effective date of such cancellation or non-renewal.

C. All premiums paid with respect to the Extended Reporting Period shall be deemed fully earned as of the first day of the Extended Reporting Period.

D. The Limits of Liability available during the Extended Reporting Period shall not exceed the balance of the Limits of Liability available on the expiration date or effective date of the cancellation or non-renewal of the Coverage Form.

E. Coverage for **Claim**(s) first received and reported during the Extended Reporting Period shall be excess over any other valid and collectible insurance providing coverage for such **Claim**(s).

## VIII. NOTICE OF CLAIM AND CIRCUMSTANCE REPORTING PROVISIONS

Notice of a **Claim** or circumstance which could give rise to a **Claim** shall be given in writing to the **Company**. If mailed, the date of mailing of such

notice shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

A.  Written Notice of a **Claim**:

1.  As a condition precedent to exercising any right to coverage under this Coverage Form, an **Insured** shall give to the **Company** written notice of a **Claim**, as soon as practicable during the **Policy Period** in which the **Claim** is first made against an **Insured** but no later than sixty (60) days after the aforementioned **Policy Period**. Coverage for a **Claim** reported to the **Company** during the sixty (60) day period after expiration, cancellation or non-renewal applies only if the **Claim** is first made against an **Insured** prior to the Coverage Form expiration or effective date of cancellation or non-renewal.

2.  If an Extended Reporting Period is purchased, notice of **Claim** shall be in accordance with the terms and conditions of the EXTENDED REPORTING PERIOD section of the Coverage Form.

B.  Written Notice of a Circumstance:

1.  As a condition precedent to exercising any right to coverage under this Coverage Form , an **Insured** shall give to the **Company** written notice of a circumstance which could reasonably be expected to give rise to a **Claim** being made against an **Insured** as soon as practicable during the **Policy Period** in which an **Insured** first becomes aware of the circumstance and if applicable, no later than the effective date of cancellation or non-renewal of the aforementioned **Policy Period**.

2.  If written notice of a circumstance which could reasonably be expected to give rise to a **Claim** being made against an **Insured** has been given to the **Company** during the **Policy Period** or if applicable, prior to the effective date of cancellation or non-renewal, any **Claim** which is subsequently made against an **Insured** and reported to the **Company** alleging, arising out of, based upon, or attributable to the facts set forth in the reported circumstance shall be considered to have been first made at the time such notice was given. Coverage for a circumstance reported pursuant to this provision applies only if the **Wrongful Act** that is the subject of the reported circumstance occurs after the retroactive

date if applicable and prior to the expiration, cancellation or non-renewal date of the **Policy Period** in which the circumstance was reported.

3.  When reporting a circumstance to the **Company**, an **Insured** shall give the reasons for anticipating why the circumstance could reasonably be expected to give rise to a **Claim** being made against an **Insured** with full particulars as to the dates and persons involved.

IX.  CANCELLATION OR NON-RENEWAL

A.  This Coverage Form may be canceled by the first **Named Insured** shown in the Declarations by either:

1.  surrender of the Coverage Form thereof to the **Company** at its address stated on the Policy Declarations; or

2.  by delivering to the **Company** written notice requesting cancellation and in either case stating when, thereafter such cancellation shall be effective.

B.  If the Coverage Form is canceled by the **Named Insured**, the **Company** shall retain the customary short rate proportion of the premium.

C.  The **Company** may cancel this Coverage Form by mailing to the first **Named Insured** shown in the Declarations, at the address shown in the policy Declarations, written notice stating when, not less than forty-five (45) days thereafter, such cancellation shall be effective, except for non-payment of premium.

D.  In the event of the failure of the **Named Insured** to pay the premium when due, this Coverage Form may be canceled by the **Company** by mailing to the first **Named Insured** shown in the Declarations written notice when, not less than ten (10) days thereafter, such cancellation shall be effective.

E.  In the event the **Company** refuses to renew this Coverage Form, the **Company** shall mail to the first **Named Insured** shown in the Declarations, not less than forty-five (45) days prior to the expiration of the Coverage Form, written notice of non-renewal. Such notice shall be binding on all **Insureds**.

F.  The **Company** shall mail notice of Cancellation or Non-renewal with a certificate of mailing stating the effective date of Cancellation or Non-renewal and the specific reason(s) for

Cancellation or Non-renewal, which shall become the end of the **Policy Period**. Mailing of such notice shall be sufficient notice of Cancellation or Non-renewal.

G.  If the Coverage Form is canceled by the **Company**, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected, or as soon as practicable thereafter.

## X.  REPRESENTATIONS AND SEVERABILITY

A.  All **Insureds** represent that the particulars and statements contained in the **Application** are true and agree that (a) those particulars and statements are the basis of this Coverage Form and are to be considered as incorporated into and constituting a part of the Coverage Form; (b) those particulars and statements are material to the acceptance of the risk assumed by the **Company**; and (c) this Coverage Form is issued in reliance upon the truth of such representations.

B.  Except for material facts or circumstances known to the person or persons signing the **Application**, no statement in the **Application** of knowledge or information possessed by an **Insured** shall be imputed to any other **Insured** for the purpose of determining the availability of coverage. However, facts pertaining to and knowledge possessed by the individual(s) signing the **Application**(s) and the President, Chairperson, Chief Executive Officer, Partner and Chief Financial Officer shall be imputed to any **Insured** for the purpose of determining if coverage is available.

## XI.  COVERAGE FORM TERRITORY

This Coverage Form shall extend to any **Wrongful Act** committed anywhere in the world provided the **Claim** is made within the United States of America, its territories or possessions, or Canada and the **Insured's** responsibility to pay a Loss is

1)  Decided on the merits in a court of competent jurisdiction; or

2)  Settled by the **Company** as provided in V. DEFENSE AND SETTLEMENT.

## XII.  SPOUSAL AND DOMESTIC PARTNER EXTENSION

A.  If a **Claim** against an **Insured** includes a **Claim** against the lawful spouse or **Domestic Partner** of such **Insured**, based solely on (a)

such spouse's or **Domestic Partner**'s status; or (b) such spouse's or **Domestic Partner**'s ownership interest in property or assets that are sought as recovery for **Wrongful Acts**, then any **Loss** which such spouse or **Domestic Partner** becomes legally obligated to pay on account of (a) or (b) above shall be deemed a **Loss** which an **Insured** becomes legally obligated to pay.

B.  All definitions, exclusions, terms and conditions of this Coverage Form, including the Deductible, applicable to any **Claim** against or **Loss** sustained by such **Insured** shall also apply to this coverage extension.

C.  The extension of coverage afforded by this section, shall not apply to any **Claim** arising out of, resulting from, caused by directly or indirectly any **Wrongful Act**, error, omission, misstatement, misleading statement or neglect or breach of duties by a spouse or **Domestic Partner**.

## XIII.  SUBROGATION

In the event of any payment under this Coverage Form, the **Company** shall be subrogated to any **Insured**'s right of recovery against any person or entity and such **Insured** shall execute and deliver such instruments and papers and do whatever else is necessary to secure such rights. No **Insured** shall by action or inaction do anything to prejudice such rights.

## XIV.  CHANGES

Notice to any agent or knowledge by any agent shall not effect a waiver or change any part of this Coverage Form or stop the **Company** from asserting any right under the terms of this Coverage Form, nor shall the terms of this Coverage Form be waived or changed except by an endorsement, issued to form a part of this Coverage Form.

## XV.  AUTHORIZATION CLAUSE AND NOTICES

By acceptance of this Coverage Form, all **Insureds** agree that the first **Named Insured** shown in the Declarations shall act on behalf of all **Insureds** with respect to the giving and receiving of any return premiums that may become due under this Coverage Form. Notice shall be made to the first **Named Insured** shown in the Declarations or such other person as shall be designated by the first **Named Insured** shown in the Declarations in writing, at the address of the

first **Named Insured** shown in the Declarations. Such notice shall be deemed to be notice to all **Insureds**. The first **Named Insured** shown in the Declarations shall be the agent of all **Insureds** to effect changes in the Coverage Form or purchase an Extended Reporting Period.

## XVI. ASSIGNMENT

Assignment of interest under this Coverage Form shall not bind the **Company** until its consent is endorsed hereon.

## XVII. OTHER INSURANCE

The Coverage Form is excess or other existing insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically written to be in excess of this Coverage Form.

## XVIII. TERMS OF POLICY CONFORMED TO STATUTE

Terms of this Coverage Form which are in conflict with the statutes of the state wherein this Coverage Form is issued are hereby amended to conform to such statutes.

## XIX. CHANGES IN CONTROL

If, after the inception date of this Coverage Form:

1. The **Named Insured** merges into or consolidates with another entity such that the **Named Insured** is not the surviving entity; or

2. Another entity, person, or group of entities or persons acting in concert acquire more than fifty percent (50%) of the assets of the **Named Insured**; or

3. Another entity, person, or group of entities and/or persons acting in concert acquires the right to elect or select a majority of the directors of the **Named Insured**; or

4. The **Named Insured** sells all or substantially all of its assets,

the above events being referred to as a "Transaction,"

this Coverage Form shall continue in full force and effect until the expiration date of the Coverage Form, or the effective date of non-renewal or cancellation for non-payment of premium, if applicable, with respect to **Wrongful Acts**

occurring before the "Transaction", but there shall be no coverage under this Coverage Form for actual or alleged **Wrongful Acts** occurring on or after the "Transaction".

The first **Named Insured** shown in the Declarations shall give the **Company** written notice of the "Transaction" as soon as practicable, but not later than thirty (30) days after the effective date of the "Transaction". As of the effective date of any "Transaction", the entire premium for this Coverage Form shall be deemed fully earned. In the event of a "Transaction", the first **Named Insured** shown in the Declarations shall have the right to an offer of coverage by the **Company** for an Extended Reporting Period to report **Wrongful Acts** occurring prior to the effective date of the "Transaction".

## XX. ACTION AGAINST THE COMPANY

A. No action shall lie against the **Company** unless as a condition precedent thereto, there shall have been full compliance with all of the terms of this Coverage Form, and until the amount of an **Insured**'s obligation to pay shall have been finally determined either by judgment against an **Insured** after actual trial or by written agreement of the **Insured**, the claimant or the claimant's legal representative, and the **Company**.

B. Any person or the legal representatives thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Coverage Form to the extent of the insurance afforded by this Coverage Form. No person or entity shall have any right under this Coverage Form to join the **Company** as a party to any action against an **Insured** to determine an **Insured**'s liability, nor shall the **Company** be impleaded by an **Insured** or their legal representatives. Bankruptcy or insolvency of an **Insured** or their successors in interest shall not relieve the **Company** of its obligations hereunder.

## XXI. ACCEPTANCE

This Coverage Form embodies all agreements existing between the parties hereunder or any of their agents relating to this insurance.

# UNITED STATES LIABILITY INSURANCE GROUP
# WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

## INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY COVERAGE FORM

## ARKANSAS STATE AMENDATORY ENDORSEMENT

It is agreed:

VI. LIMITS OF LIABILITY, E. is deleted in its entirety and replaced with the following:

E. The Limit of Liability for the Extended Reporting Period, if applicable, shall be a part of and not in addition to the Limit specified in the Policy Declarations. The Annual Aggregate Limit of Liability for the Extended Reporting Period shall be no less than the greater of the amount of coverage remaining in the expiring Policy Annual Aggregate Limit of Liability or fifty percent (50%) of the Annual Aggregate Limit of Liability at Policy inception.

VII. EXTENDED REPORTING PERIOD, A. and E. are deleted in their entirety and replaced by the following:

A. If the Coverage Form expires, is cancelled or is non-renewed for any reason, the **Named Insured** shall have the right to purchase an Extended Reporting Period to report any **Claim**(s) or circumstance(s) which could be expected to give rise to a **Claim** being first made against an **Insured** during the twelve (12) months, twenty-four (24) months or thirty-six (36) months after the expiration date or effective date of such cancellation or non-renewal (depending upon the Extended Reporting Period purchased). An Extended Reporting Period shall only apply to a **Wrongful Act** committed before the date of the Policy expiration, cancellation or non-renewal. For the purpose of this clause, any change in premium terms or terms on renewal shall not constitute a refusal to renew.

E. The Limits of Liability available during the Extended Reporting Period shall be no less than the greater of the amount of coverage remaining in the expiring Policy aggregate or fifty percent (50%) of the aggregate at Policy inception.

IX. CANCELLATION OR NON-RENEWAL is deleted in its entirety and replaced with the following:

IX. CANCELLATION OR NON-RENEWAL

A. Cancellation

1. The first **Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this Policy by mailing or delivering to the first **Named Insured** written notice of cancellation at least:

IAE AR M (12-10)                                                                 Page 1 of 3

      a.  Ten (10) days before the effective date of cancellation if the we cancel for nonpayment of premium; or

      b.  Forty-five (45) days before the effective date of cancellation if we cancel for any other reason.

3.  We will mail or deliver notice to the first **Named Insured's** last mailing address known to us.

4.  Notice of cancellation will state the effective date of cancellation. The **Policy Period** will end on that date.

5.  a.  If this Policy is cancelled, we will send the first **Named Insured** any premium refund due.

      b.  We will refund the pro rata unearned premium if the Policy is:

         (1) Cancelled by us or at our request;

         (2) Cancelled but rewritten with us or in the **Company's** company group;

         (3) Cancelled because the **Named Insured** no longer has an insurable interest in the property or business operation that is the subject of this insurance; or

         (4) Cancelled after the first year of a prepaid Policy that was written for a term of more than one year.

      c.  If the Policy is cancelled at the request of the first **Named Insured**, other than a cancellation described in b.(2), (3) or (4) above, the **Company** will refund ninety percent (90%) of the pro rata unearned premium.

      d.  The cancellation will be effective even if we has not made or offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

7.  If this Policy has been in effect more than sixty (60) days or is a renewal Policy, we may cancel only for one or more of the following reasons:

      a.  Non-payment of premium;

      b.  Fraud or material misrepresentation made by any **Insured** or with any **Insured's** knowledge in obtaining the Policy, continuing the Policy or in presenting a **Claim** under the Policy;

      c.  The occurrence of a material change in the risk that substantially increases any hazard insured against after Policy issuance;

      d.  Violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or its occupancy which substantially increases any hazard insured against under the Policy;

      e.  Non-payment of membership dues in those cases where our by-laws, agreements or other legal instruments require payment as a condition of the issuance and maintenance of the Policy; or

      f.  A material violation of a material provision of the Policy.

8.  If we cancel for:

      a.  Nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first **Named Insured** at least ten (10) days before the effective date of cancellation.

       b.  Any other reason, we will mail or deliver notice of cancellation to the first **Named Insured** at least forty-five (45) days before the effective date of cancellation.

B.  NON-RENEWAL

    1.  If we decide not to renew this Policy, we will mail to the first **Named Insured** shown in the Declarations written notice of non-renewal at least sixty (60) days before:

       a.  Its expiration date; or

       b.  Its anniversary date, if it is a Policy written for a term of more than one year and with no fixed expiration date.

    However, we are not required to send this notice if non-renewal is due to the first **Named Insured's** failure to pay any premium required for renewal.

    2.  We will mail notice to the first **Named Insured's** mailing address last known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

All other terms and conditions of this Policy remain unchanged. This endorsement is a part of your Policy and takes effect on the effective date of your Policy unless another effective date is shown.

# UNITED STATES LIABILITY INSURANCE GROUP
# WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

### INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY COVERAGE FORM

## PREMIUM AUDIT PROVISION ENDORSEMENT

It is agreed:

III. DEFINITIONS is amended by the addition of the following:

"**Audit Premium**" means an adjustment to the premium showing in the Declarations resulting from an audit.

XIV. CHANGES is amended by the addition of the following:

### PREMIUM AUDIT PROVISION

The **Company** may audit the books and records of an **Insured** as they relate to this policy at any time during the **Policy Period** and up to three years after the termination of the policy. The **Insured** will maintain current and accurate books and records and make them available to **Company** or its designee for physical inspection and or copying upon request. Failure or refusal to permit such audit shall be cause for cancellation or non-renewal of this policy in accordance with IX. CANCELLATION OR NON-RENEWAL.

A. The **Company** will compute all premiums for this Policy in accordance with the **Company's** rules and rates.

B. The premium shown in the Declarations is an advance, minimum and deposit premium. At the conclusion of an audit, the **Company** will compute the **Audit Premium** for the **Policy Period** covered by the audit.

C. If the **Audit Premium** is greater than the premium shown in the Declarations, the **Company** shall have the right but not the obligation to collect the additional premium due. **Audit Premiums** are due and payable on notice to the **Insured.**

D. If the **Audit Premium** is less than the premium shown in the Declarations, then said premium is the minimum premium and is not subject to further adjustment.

All other terms and conditions of this Policy remain unchanged. This endorsement is a part of the **Named Insured's** Policy and takes effect on the effective date of the **Named Insured's** Policy unless another effective date is shown.

IAE 229 (12-10)                                                                                    Page 1 of 1

# INSURANCE

# POLICY

## UNITED STATES LIABILITY INSURANCE GROUP

A STOCK COMPANY

A BERKSHIRE HATHAWAY COMPANY

1190 Devon Park Drive
Wayne, PA 19087-2191
888-523-5545 – USLI.COM

This policy jacket together with the policy declarations, coverage forms and endorsements. if any, complete this policy.

The enclosed declarations designates the issuing company.

Jacket (07-19)

## INSURANCE POLICY

# Read your policy carefully!

**In Witness Whereof**, the company has caused this Policy to be executed and attested.  Where required by law, this Policy shall not be valid unless countersigned by a duly authorized representative of the company.

Secretary

President

Jacket (07-19)

Page 2 of 2

## ARKANSAS NOTICE TO POLICYHOLDERS

### IMPORTANT NOTICE

You may contact the insurance company's producer for information on this policy. The producer's address and phone number is:

Name: _____

Address: _____

_____

Telephone Number: _____

You may contact your insurer designated on the policy declarations page. The company's name, address and toll free number is:

United States Liability Insurance Group
1190 Devon Park Drive
Wayne, PA 19087
1-800-523-5545

If we at United States Liability Insurance Group fail to provide you with reasonable and adequate service, you should feel free to contact:

Arkansas Insurance Department
1 Commerce Way, Suite 102
Little Rock, AR 72202
(501) 371-2640 or (800) 852-5494

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR OR TERRORISM EXCLUSION

The following supercedes the terms and conditions of this policy.

This Policy does not apply to, and the Company will not defend or pay Loss for, any Claim arising out of, directly or indirectly resulting from, based upon or in any way involving any actual or alleged:

    (1)  War, including undeclared or civil war;

    (2)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

    (3)  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

    (4)  "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage

The following definition is added to the **Definitions** Section:

"Terrorism" means activities against persons, organizations or property of any nature:

**1.** That involve the following or preparation for the following:
    **a.**  Use or threat of force or violence;
    **b.**  Commission or threat of a dangerous act; or
    **c.**  Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**2.** When one or both of the following applies:
    **a.**  The effect is to intimidate or coerce a government, or to cause chaos among the civilian population or any segment thereof, or to disrupt any segment of the economy; or
    **b.**  It is reasonable to believe the intent is to intimidate or coerce a government, or to seek revenge or retaliate, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

ELECTRONICALLY FILED
Stone County Circuit Court
Angie Hudspeth Wade, Circuit Clerk
2024-Jun-19  14:44:35
69CV-23-12
C16D01 : 7 Pages

IN THE CIRCUIT COURT OF STONE COUNTY, ARKANSAS

ASE GRO LINDLAND and OLAV LINDLAND            PLAINTIFFS

VS.                    CASE NO. 69CV-23-12

STONE COUNTY INSURANCE
AGENCY, INC. and JANET NESBITT                DEFENDANTS

### CONSENT JUDGMENT

Come now for a hearing in the above styled matter, Ase Gro Lindland and Olav Lindland, plaintiffs herein, appearing by and through their attorney, Blair Arnold, and Stone County Insurance Agency, Inc. and Janet Nesbitt, defendants herein, defendants herein, appearing by and through their attorney, Mark Breeding, and from the pleadings, the compromise settlement between the parties, statements of counsel, and other facts and matters before the Court, the Court doth find as follows:

1. That it has jurisdiction over the parties to and the subject of this matter.

2. That plaintiffs are residents and citizens of Norway; that defendant Stone County Insurance Agency, Inc. is a corporation organized and existing under the laws of the State of Arkansas with its principal place of business in Stone County, Arkansas; that defendant Janet Nesbitt is a resident of Stone County, Arkansas; that the transactions and occurrences on which this action is based occurred in Stone County, Arkansas.

Page 1 of 6

EXHIBIT
3

3. That defendant Janet Nesbitt is an agent, servant or employee of defendant Stone County Insurance Agency, Inc., and at all times relevant to this complaint was acting within the course and scope of her agency, servanthood or employment; that defendant Stone County Insurance Agency, Inc. is responsible for the actions and inactions of defendant Janet Nesbitt under the doctrine of respondent superior.

4. That plaintiffs owned property in Stone County, Arkansas since 2008; that the property of plaintiffs had a mailing address or physical location address of 102 Kong Harald, Mountain View, Arkansas 72560, and plaintiffs had a home located on their property which was constructed in 2009-2010.

5. That plaintiffs spent part of each year at their residence in Stone County and the majority of the year in Norway.

6. That plaintiffs had a long-standing business relationship with defendants who are independent insurance agents and obtained homeowners policies from defendants which insured their premises, home, personal property, and other items on their property.

7. That it was the habit and custom of plaintiffs to take their credit card to defendants for payment of the policy premiums over the years.

8. That prior to the policy at issue in this matter, defendants have obtained coverage for plaintiffs through Metropolitan Property and Casualty Insurance Company or some other subsidiary of MetLife Auto & Home.

Page 2 of 6

9. That around the time of the annual policy renewal in early May, 2021, defendants informed plaintiffs that henceforth the coverage would be provided by the Farmers Insurance Group or one of its subsidiaries; that actually the Farmers Insurance Group had bought out the MetLife Auto & Home and its subsidiaries or the companies involved.

10. That in the period of time around the time the policy was renewing, plaintiffs could not come to the United States because of travel restrictions due to the Covid pandemic, so they were in Norway and could not get to the United States much less their residence in Stone County; and that they were not receiving mail addressed to their Stone County residence.

11. That on or about May 4, 2021 plaintiff Ase Gro Lindland sent an email to defendant Janet Nesbitt asking defendant to help her out with the home insurance because the bill was not sent to Norway, and she did not have it; that in that email, she gave defendant Janet Nesbitt the name of the current insurance carrier, their policy number, and their credit card number so that defendants could pay their premium; that additionally plaintiff Ase Gro Lindland was not sure that she could make an online payment directly from Norway.

12. That defendant Janet Nesbitt assumed the duty to pay plaintiffs' premiums and made two payments on the insurance premium with plaintiffs' credit card.

13. That payments were made by defendants on the homeowners insurance company by two credit card payments on May 4, 2021, one in the

Page 3 of 6

amount of $726.00 and one in the amount of $725.00; and that defendants said this paid for a year's worth of coverage; that in fact defendants had only paid for 6 months of coverage.

14. That defendant Janet Nesbitt, in email exchanges later that day, negligently told plaintiff Ase Gro Lindland that she had paid the premiums for one year rather than the six (6) months premium which she actually paid.

15. That as a result of these payments, a homeowners insurance policy by Metropolitan Property and Casualty Insurance Company on Policy No. 0723329230 was issued providing coverage with a term of coverage from May 4, 2021 to 12:01 a.m. Standard Time on May 4, 2022, that due to a clerical error plaintiff Olav Lindland was listed as "Olva Lindland" on the policies; that plaintiffs did not receive a copy of the policy until Dustin Nichols, a servant, employee or agent of the defendant Stone County Insurance Agency, Inc., gave it to them on April 15 or 16, 2022.

16. That on or about May 5, 2021 Metropolitan Property and Casualty Insurance Company sent a bill requesting a $78.00 payment which they said would be due by May 25, 2021; that this statement was sent to plaintiffs' address in Stone County; that they did not receive it; that it was not in their mailbox when they finally were able to get back to the United States and their residence; and that a copy of this notice was sent to defendants which defendants negligently failed to advise plaintiffs.

17. That at some time prior to October 27, 2021, Farmers Insurance or Metropolitan Property and Casualty Insurance Company mailed a notice to plaintiffs at their Stone County residence address stating that payment for the second 6 months of the term of the policy was overdue and that the policy would be cancelled and terminated unless payment was received on or before 12:01 a.m. on October 27, 2021; that plaintiffs did not receive this notice in Norway nor was the notice in their mailbox when they returned to the United States at their residence in Stone County; defendants were sent a copy of the said notice and negligently failed to inform plaintiffs of this notice so that plaintiffs might arrange a means to make this payment.

18. That the policy expired or was cancelled or terminated as of 12:01 a.m. on October 27, 2021.

19. That on or about March 30, 2022 a fire occurred at the residence, and there was a total loss to the home and all contents of the home.

20. That a claim was made on the existing policy, and a notice dated April 13, 2022 was sent to plaintiffs from the Homeowner Operations Field Office of Farmers Insurance denying coverage because the policy had been cancelled on October 27, 2021 for nonpayment of the second six months premium.

21. That as a proximate cause of defendants' negligence, plaintiffs suffered damages in the loss of their home in the amount of $334,000.00, the amount of coverage for damage to the home; $176,472.00 for the loss of their personal property, and $8,100.00 for cost of accommodations which they had to

Page 5 of 6

pay when they visited Stone County after the fire loss; that additionally plaintiffs were entitled to prejudgment interest at the rate of 6% per annum from March 30, 2022, the date of the fire loss, until the date of this judgment or the sum of $68,110.52.

22. That plaintiffs are entitle to a total judgment from and against defendant Stone County Insurance Agency, Inc. in the sum of $586,682.52.

THEREFORE, IT IS CONSIDERED, ORDERED, ADJUDGED. AND DECREED that Ase Gro Lindland and Olav Lindland should have and receive judgment from and against Stone Couty Insurance Agency, Inc., a defendant herein, in the sum of $586,682.52 with interest on said judgment or any unpaid portion thereof at the rate of 10% per annum as well as for their costs; that writs of execution or garnishment may issue in aid of collection of said judgment; and that the action against defendant Janet Nesbitt is dismissed without prejudice pursuant to ARCP 41(a).

Electronically signed by:
Hon. Holly Meyer, Circuit Judge

APPROVED:

Blair Arnold,
Attorney for Plaintiffs

Mark Breeding.
Attorney for Defendants

Page 6 of 6



**Case Title:** ASE GRO LINDLAND ET AL V STONE CO INSURANCE ET AL

**Case Number:** 69CV-23-12

**Type:** JUDGMENT-CONSENT

So Ordered

Holly L. Meyer, 16th Circuit Division 1 Judge

Electronically signed by HLMEYER on 2024-06-19    page 7 of 7

'24 JUN 28 10:29AM