## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**UNITED STATES LIABILITY**
**INSURANCE COMPANY**                                                    **PLAINTIFF**

**v.**                                **Case No. 4:24-cv-00614 KGB**

**STONE COUNTY INSURANCE**
**AGENCY, INC., ASE GRO LINDLAND,**
**and OLAV LINDLAND**                                                    **DEFENDANTS**

### OPINION AND ORDER

Before the Court is the motion for summary judgment filed by plaintiff United States Liability Insurance Company ("USLI") (Dkt. No. 4). Defendant Stone County Insurance Agency, Inc. ("Stone County Insurance") filed a response to USLI's motion for summary judgment (Dkt. No. 14), and defendants Ase Gro Lindland and Olav Lindland ("the Lindlands") filed a response in opposition to USLI's motion for summary judgment (Dkt. No. 17).

Also before the Court is Stone County Insurance's motion for summary judgment (Dkt. No. 26). USLI filed a response to Stone County Insurance's motion for summary judgment (Dkt. No. 34). Stone County Insurance replied to USLI's response (Dkt. No. 37).

Finally, before the Court is the Lindlands' motion for summary judgment (Dkt. No. 31). USLI filed a response to the Lindlands' motion for summary judgment (Dkt. No. 35). The Lindlands replied to USLI's response (Dkt. No. 40).

For the following reasons, the Court grants USLI's motion for summary judgment (Dkt. No. 4), denies Stone County Insurance's motion for summary judgment (Dkt. No. 26), and denies the Lindlands' motion for summary judgment (Dkt. No. 31).

## I.  Factual Background

As required by Federal Rule of Civil Procedure 56 and Local Rules 56.1 and 7.2, USLI submitted a statement of facts in support of its motion for summary judgment (Dkt. No. 5).  Stone County Insurance filed a statement of facts in opposition to USLI's motion for summary judgment that added facts that Stone County Insurance asserts were "omitted" by USLI in its statement of facts (Dkt. No. 13).  The Lindlands filed a statement of facts in opposition to USLI's motion for summary judgment that also added facts that USLI did not include in its statement of facts (Dkt. No. 15).  In the Lindlands' statement of facts in opposition to USLI's motion for summary judgment, they "incorporate by reference all allegations in Defendant Stone County Insurance Agency Inc.'s Statement of Facts in Opposition to USLI's Motion for Summary Judgment." (*Id.*, ¶ 9).

Stone County Insurance filed a statement of facts in support of its motion for summary judgment (Dkt. No. 28).  USLI responded to Stone County Insurance's statement of facts and added a statement of additional material facts in opposition to Stone County Insurance's motion for summary judgment (Dkt. No. 33).  The Lindlands filed a statement of facts in support of their motion for summary judgment (Dkt. No. 30).  USLI responded to the Lindlands' statement of facts and added a statement of additional material facts in opposition to the Lindlands' motion for summary judgment (Dkt. No. 36).

Unless otherwise cited, the Court recounts the facts from the parties' statements of fact and the parties' responses to the statements of fact (Dkt. Nos. 5; 13; 15; 25; 28; 30; 33; 36).

### A.  The USLI Policy

USLI issued Policy No. IAE1554936A (the "Policy") to Stone County Insurance with a Policy Period of May 11, 2022, to May 11, 2023 (Dkt. Nos. 5, ¶ 1; 5-1; 33, ¶ 1; 36, ¶ 1).  A true

and correct copy of the Policy is attached as Exhibit 1 to USLI's statement of facts in support of

its motion for summary judgment (Dkt. Nos. 5-1; 28, ¶ 1; 33, ¶ 1; 36, ¶ 1).  The Policy was issued

to Named Insured "Stone County Insurance Agency, Inc." (Dkt. No. 5, ¶ 2).  The Policy contains

an "Insurance Agents and Brokers Professional Liability Coverage Form."

The Policy provides in relevant part:

In consideration of the payment of the premium and reliance upon all statements made and information furnished to the **Company**, including the statements made in the **Application** (and all attachments and materials submitted therewith) and subject to all the provisions of this Coverage Form, the **Company** agrees as follows:

I.    INSURING AGREEMENTS

    A.    The **Company** will pay on behalf of an **Insured, Loss** excess of the Deductible not exceeding the Limit of Liability shown on the Policy Declarations for which this coverage applies that an **Insured** shall become legally obligated to pay because of **Claims** first made against an **Insured** during the **Policy Period** or if applicable, during the Extended Reporting Period, for **Wrongful Acts** or **Wrongful Acts** resulting in **Personal Injury**. Coverage only applies for **Wrongful Act**(s) or **Wrongful Act**(s) resulting in **Personal Injury** occurring prior to the Coverage Form expiration or if applicable, effective date of cancellation or non-renewal and arising solely out of an **Insured**'s duties on behalf of the **Named Insured**.

    B.    The **Company** has the right and duty to defend any **Claim** to which this Insurance applies, even if the allegations of the **Claim** are groundless, false or fraudulent.

. . .

III.    DEFINITIONS

    . . .

    B.    "**Claim**" means:
        1.    any written notice received by any **Insured** that any person or entity intends to hold such **Insured** responsible for a **Wrongful Act**; or

2.  any judicial or administrative proceeding initiated against any Insured seeking to hold such **Insured** responsible for a **Wrongful Act**, including any appeal therefrom.

A **Claim** shall be considered first made when an **Insured** or any legal representative or agent of an **Insured** first received notice of a **Claim**.

. . .

G.  "**Loss**" means damages and settlements, but does not include:

1.  punitive or exemplary damages, that portion of any multiplied damage award which exceeds the amount multiplied, criminal or civil fines or penalties imposed by law, taxes, and matters deemed uninsurable under the law pursuant to which this Coverage Form shall be construed, nor,

2.  the return of or dispute over, in whole or in part, commission(s) or brokerage fees, costs and expenses, previously paid, retained, or due.

. . .

K.  "**Wrongful Act**" means any actual or alleged negligent act, error, or omission of an **Insured** arising solely from that **Insured**'s services rendered for others as an insurance agent, insurance broker, insurance general agent, surplus lines insurance broker, insurance consultant, employee insurance benefits counselor, estate insurance planner, insurance claims administrator, insurance appraiser, insurance premium financer, or notary public.  The same "**Wrongful Act**", an interrelated series of **Wrongful Acts** or a series of similar or related **Wrongful Acts** by one or more **Insureds** shall be deemed to be one **Wrongful Act** and to have commenced at the time of the earliest **Wrongful Act**.

. . .

IV.  EXCLUSIONS

The **Company** shall not be liable to make payment for **Loss** or **Claim Expenses** in connection with any **Claim** made against an **Insured** arising out of, directly or indirectly resulting from or in consequence of or in any way involving :

. . .

4

D.    the commingling of, or inability or failure to pay, collect, safeguard or return any money;

(Dkt. Nos. 5, ¶ 3; 5-1; 13, ¶ 4; 15, at 1, ¶ 8; 33, ¶¶ 1–2; 36, ¶ 2).

### B.    The Allegations In The Underlying Complaint

The Lindlands sued Stone County Insurance in a lawsuit styled *Lindland, et al. v. Stone County Insurance Agency, Inc., et al.*, Case No. 69CV-23-12, in the Circuit Court of Stone County, Arkansas (the "underlying lawsuit") (Dkt. Nos. 5, ¶ 4; 28, ¶ 3; 33, ¶ 3; 36, ¶ 3).   A true and correct copy of the complaint (the "underlying Complaint") in the underlying lawsuit is attached as Exhibit 2 to USLI's statement of facts in support of its motion for summary judgment (Dkt. Nos. 5-2; 30, ¶ 3; 36, ¶ 3).

In the underlying Complaint, the Lindlands alleged that they owned a home in Stone County, Arkansas—spending part of the year in Arkansas and the majority of the year in Norway (Dkt. No. 5, ¶ 5).  In the underlying Complaint, the Lindlands alleged that they had a long-standing business relationship with Stone County Insurance in which Stone County Insurance obtained homeowners insurance for the Lindlands' Arkansas home and "that it was the habit and custom of [the Lindlands] to take their credit card to [Stone County Insurance] for payment of the policy premiums over the years." (Dkt. Nos. 5, ¶ 6; 33, ¶ 1; 36, ¶ 1; 38, ¶ 1).  In the underlying Complaint, the Lindlands alleged that on May 4, 2021, Ase Gro Lindland sent Stone County Insurance her credit card number so that Stone County Insurance could pay the Lindlands' insurance premiums (Dkt. Nos. 5, ¶ 7; 33, ¶ 2; 36, ¶ 2; 38, ¶ 2).  In the underlying Complaint, the Lindlands alleged that Stone County Insurance, through Stone County Insurance's agent, servant, or employee Janet Nesbitt, assumed the duty to pay the Lindlands' homeowners premiums and made two payments on the homeowners insurance premiums with the Lindlands' credit card (Dkt. Nos. 5, ¶ 8; 33, ¶ 3; 36, ¶ 3; 38, ¶ 3).

The allegations in the underlying Complaint include the following:

9. That in the period of time around the time the policy was renewing, plaintiffs could not come to the United States because of travel restrictions due to the Covid pandemic, so they were in Norway and could not get to the United States much less their residence in Stone County; and that they were not receiving mail addressed to their Stone County residence.

10. That on or about May 4, 2021 plaintiff Ase Gro Lindland sent an email to defendant Janet Nesbitt asking defendant to help her out with the home insurance because the bill was not sent to Norway, and she did not have it; that in that email, she gave defendant Janet Nesbitt the name of the current insurance carrier, their policy number, and their credit card number so that defendants could pay their premium; that additionally plaintiff Ase Gro Lindland was not sure that she could make an online payment directly from Norway.

11. That defendant Janet Nesbitt assumed the duty to pay plaintiffs premiums and made two payments on the insurance premium with plaintiffs' credit card.

12. That payments were made by defendants on the homeowners insurance company by two credit card payments on May 4, 2021, one in the amount of $726.00 and one in the amount of $725.00; and that defendants said this paid for a year's worth of coverage; that in fact defendants had only paid for 6 months of coverage.

13. That defendant Janet Nesbitt, in email exchanges later that day, told plaintiff Ase Gro Lindland that she had paid the premiums for one year.

14. That as a result of these payments, a homeowners insurance policy by Metropolitan Property and Casualty Insurance Company on Policy No. 0723329230 was issued providing coverage with a term of coverage from May 4, 2021 to 12:01 a.m. Standard Time on May 4, 2022 . . .

15. That on or about May 5, 2021 Metropolitan Property and Casualty Insurance Company sent a bill requesting a $78.00 payment which they said would be due by May 25, 2021; that this statement was sent to plaintiffs' address in Stone County; that they did not receive it; that it was not in their mailbox when they finally were able to get back to the United States and their residence; and that it is the information and belief of plaintiffs that a copy of was sent to defendants which defendants did not inform them.

16. That at some time prior to October 27, 2021, Farmers Insurance or Metropolitan Property and Casualty Insurance Company mailed a notice to plaintiffs at their Stone County residence address stating that payment for the second 6 months of the term of the policy was overdue and that the policy would

be cancelled and terminated unless payment was received on or before 12:01 a.m. on October 27, 2021; that plaintiffs did not receive this notice in Norway nor was the notice in their mailbox when they returned to the United States at their residence in Stone County; that it is the information and belief of plaintiffs that defendants were sent a copy of the notice and failed to pay the premium or inform plaintiffs after undertaking the duty to be paying the premiums with the plaintiffs' credit card; and that they failed to ever inform plaintiffs or just to pay the next 6 months premium using plaintiffs' credit card.

17. That defendants failed to pay the next 6 months premium on the homeowners insurance policy and failed to inform plaintiffs so that they might try to find some alternate way to make payment.

(Dkt. Nos. 30, ¶ 4; 5-2, ¶¶ 9–17; *see also* Dkt. Nos. 13, ¶¶ 1, 2–3; 15, ¶¶ 2, 3; 28, ¶ 4; 33 ¶¶ 4–7; 36, ¶¶ 4–7; 38, ¶¶ 4–7).

The Lindlands allege that, during the period of time around the time the policy was renewing, the Lindlands could not come to the United States because of COVID-19 travel restrictions, and they were in Norway and were not receiving mail addressed to their Stone County residence (Dkt. No. 15, ¶ 1).

In the underlying Complaint, the Lindlands alleged that Stone County Insurance told the Lindlands that it had paid the homeowners insurance premiums for one year (Dkt. Nos. 5, ¶ 9; 28, ¶ 4). In the underlying Complaint, the Lindlands allege that Stone County Insurance only paid six months of homeowners insurance premiums, failed to pay the next six months of homeowners insurance premiums, and failed to inform the Lindlands of the nonpayment (Dkt. No. 5, ¶ 10). In the underlying Complaint, the Lindlands alleged that their homeowners insurance policy expired, cancelled, or terminated on October 27, 2021 (*Id.*, ¶ 11).

In the underlying Complaint, the Lindlands alleged that a fire occurred at their home on March 30, 2022 (Dkt. Nos. 5, ¶ 12; 15, ¶ 4). In the underlying Complaint, the Lindlands alleged that the Lindlands' homeowners' insurer denied coverage for their claim for damages from the fire

"because the policy had been cancelled on October 27, 2021, for nonpayment of the second six months premium." (Dkt. No. 5, ¶ 13).

In Count 1 of the underlying Complaint, the Lindlands alleged that Stone County Insurance "had assumed a duty to pay the premiums on the [Lindlands'] homeowners insurance policy using [the Lindlands'] credit card" but failed to pay the second six months of premiums after one bill (Dkt. Nos. 5, ¶ 14; 33, ¶ 8; 36, ¶ 8).  In Count 2 of the underlying Complaint, the Lindlands alleged that an oral contract was created between the Lindlands and Stone County Insurance for Stone County Insurance to pay plaintiffs' premiums using plaintiffs' credit card as a means for payment but that Stone County Insurance breached the oral contract by failing to pay six months of premiums after advising the Lindlands that they had paid a year of premiums (Dkt. Nos. 5, ¶ 15; 33, ¶ 9; 36, ¶ 9; 38, ¶ 9).

### C.    USLI's Hiring Of Counsel To Represent Stone County Insurance

Upon the filing of the underlying Complaint by the Lindlands on February 15, 2023, USLI retained the law firm of Watts, Donovan, Tilley & Carson, P.A. ("WDT&C") to defend Stone County Insurance  (Dkt. Nos. 13, ¶ 4; 28, ¶ 4; 33, ¶ 5).  Specifically, the Policy provides in relevant part:

I.    INSURING AGREEMENTS

B.    The **Company** has the right and duty to defend any **Claim** to which this Insurance applies, even if the allegations¶ of the **Claim** are groundless, false or fraudulent.

(Dkt. Nos. 5, ¶ 3; 13, ¶ 4; 15, ¶ 9; 28, ¶ 2; 30, ¶ 2).

On March 28, 2023, the law firm of  WDT&C filed an answer for Stone County Insurance and Ms. Nesbitt (Dkt. Nos. 13, ¶ 5; 28, ¶ 5; 33, ¶ 6).

A hearing was held in February 2024 during which the Stone County Circuit Court advised the parties that the case would be set for trial in September 2024 (Dkt. Nos. 13, ¶ 6; 28, ¶ 6; 33, ¶ 7).  Subsequently, an order was entered by the Stone County Circuit Court setting the case for trial sometime between September 16-27, 2024 (*Id*.).

On April 3, 2024, Kevin Brown, on behalf of USLI, sent correspondence to Stone County Insurance advising that USLI had determined that the Policy did not provide coverage for the allegations contained in the Lindlands' complaint and that it would continue to fund the defense until May 3, 2024, or until such time as the insureds retained new counsel, if that date was before May 3, 2024 (Dkt. Nos. 13, ¶ 7; 28, ¶ 7).  Mr. Brown further advised that if the insureds had any questions or disagreed with the decision that they should please contact him and provided his email address to do so (*Id*.).

On April 26, 2024, Stone County Insurance, through its attorney, sent correspondence to Mr. Brown explaining why USLI's decision to withdraw the defense of its insureds was in error and requested USLI reconsider its decision and continue to provide a defense (Dkt. Nos. 13, ¶ 8; 28, ¶ 8).  Specifically, Mr. Brown was advised, in part,

> I wanted to request that the Company reconsider its decision and continue to provide a defense under reservation of rights.  I have read the attached April 3 letter and respectfully disagree with the conclusion that the allegations contained in Plaintiff's Complaint fall within Exclusion D "Because this Claim involves the alleged failure to pay premium…."

> Exclusion D excludes coverage for: "the commingling of, or inability or failure to pay, collect, safeguard or return any money…"

> First, as the Arkansas Supreme Court has noted:

> in examining the duty to defend, this court has recognized the general rule that the allegations in the pleadings against the insured determine the insurer's duty to defend.  *See Mattson v. St. Paul Title Co. of the South*, 277 Ark. 290, 641 S.W.2d 16 (1982); *Fox Hills Country Club, Inc. v. American Ins. Co.*, 264 Ark. 239, 570 S.W.2d

275 (1978); *Commercial Union Ins. Co. of America v. Henshall*, 262 Ark. 117, 553 S.W.2d 274 (1977). Additionally, this court has recognized that the duty to defend is broader than the duty to indemnify. *See Commercial Union Ins. Co. of America v. Henshall*, *supra*. However, the duty to defend arises when there is a possibility that the injury or damage may fall within the policy coverage. *See Home Indemnity Co. v. City of Marianna*, 291 Ark. 610, 727 S.W.2d 375 (1987). Conversely, where there is no possibility that the damage alleged in the complaint may fall within the policy coverage, there would be no duty to defend. *See* C.T. Drechsler, Annotation, *Allegations in Third Person's Action Against Insured as Determining Liability Insurer's Duty to Defend*, 50 A.L.R.2d 458 (1956).

*Murphy Oil USA, Inc. v. Unigard Sec. Ins. Co.*, 61 S.W.3d 807, 812–13 (2001).

The burden of proving that an exclusion applies is on the insurance company. *Farm Bureau Mut. Ins. Co. of Arkansas, Inc. v. Future Davenport*, 2017 Ark. App. 207, 5, 519 S.W.3d 702, 706–07 (2017). If there is doubt or uncertainty as to the policy's meaning and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted. *Ryman*, 309 Ark. at 287, 831 S.W.2d at 135. It is the duty of the court to strongly construe provisions contained in a policy of insurance against the insurance company that prepared it, and if a reasonable construction may be given to the contract that would justify recovery, we must do so. *Id*.

With all this in mind, Plaintiffs allegations clearly and unambiguously go beyond seeking liability for "the commingling of, or inability or failure to pay, collect, safeguard or return any money." Plaintiffs allege in paragraphs 11-13 that they asked Defendants to make two insurance payments for premiums using Plaintiff's credit cards. Defendants did so but the payments made only covered 6 months. Defendants incorrectly told Plaintiffs the payments were for 1 year. If liability exists, it is not for the failure to make a payment; payment was made. The alleged negligence is that the Defendants allegedly inaccurately told Plaintiffs the payment made were for 1 year of premiums rather than 6 months.

Paragraph 15 alleges Defendants are negligent for not informing Plaintiffs of a bill mailed out May 5, 2021. This allegation is a separate act of negligence from the acts complained of in Paragraphs 11-13 and clearly has no applicability to Exclusion D.

Paragraph 16 makes the same allegation as 15 regarding an alleged subsequent overdue notice. That is, Defendants negligently failed to advise Plaintiffs of the overdue notice. This alleged negligent act has nothing to do with "the commingling of, or inability or failure to pay, collect, safeguard or return any money…"

I am requesting the Company reconsider its decision to withdraw from the defense and continue to provide a defense in this matter. If it will not do so, a Complaint for Declaratory Judgment will be filed as soon as possible by Stone County Insurance Agency, Inc seeking a Declaration of Coverage and damages including attorney fees. I truly believe a continuation of the defense by the Company is in its best interest and that of its insured.

(Dkt. Nos. 13, ¶ 8; 28, ¶ 8).

Mr. Brown never responded to the April 26, 2024, email (Dkt. Nos. 13, ¶ 9; 28, ¶ 9). On May 24, 2024, correspondence was again sent to Mr. Brown requesting a response as to whether USLI would be willing to reconsider its withdrawal of the defense of its insureds. Again, Mr. Brown did not respond to the correspondence (Dkt. Nos. 13, ¶ 10; 28, ¶ 10). On May 8, 2024, the law firm of WDT&C filed a motion to withdraw as counsel in accordance with the instructions of USLI (Dkt. Nos. 13, ¶ 11; 28, ¶ 11; 33, ¶ 12). The Stone County Circuit Court granted the motion on May 15, 2024 (*Id.*).

The docket sheet in the underlying lawsuit does not indicate any activity in the underlying lawsuit between May 15, 2024, when defense counsel retained by USLI was permitted to withdraw and June 19, 2024, when the Consent Judgment was entered by the Circuit Court in the underlying lawsuit (Dkt. Nos. 33, ¶ 18; 38, ¶ 18).

The Lindlands maintain that appropriate notice as required by Arkansas Code Annotated § 23-89-101 has been given. (Dkt. No. 30, ¶ 17).

### D.    The Consent Judgment In The Underlying Lawsuit

On June 19, 2024, a consent judgment ("the Consent Judgment") was entered in the underlying lawsuit (Dkt. Nos. 12, ¶ 12; 25, ¶ 12; 28, ¶ 12; 33, ¶ 13; 36, ¶ 13). A correct copy of the Consent Judgment is attached as Exhibit 3 to USLI's statement of facts in support of its motion for summary judgment (Dkt. Nos. 5-3; 13, ¶ 12; 22, ¶ 13; 25, ¶ 12; 28, ¶ 12; 36, ¶ 13). The Consent

Judgment was signed as "APPROVED" by the Lindlands' attorney and Stone County Insurance's attorney (Dkt. Nos. 5, ¶ 17; 33, ¶ 17; 36, ¶ 17; 38, ¶ 17).

The Consent Judgment found that the Lindlands had a long-standing business relationship with Stone County Insurance in which Stone County Insurance obtained homeowners insurance for the Lindlands' Arkansas home and "that it was the habit and custom of [the Lindlands] to take their credit card to [Stone County Insurance] for payment of the policy premiums over the years." (Dkt. Nos. 5, ¶ 18; 33, ¶ 10; 36, ¶ 10).

The Consent Judgment stated:

> 10. That in the period of time around the time the policy was renewing, plaintiffs could not come to the United States because of travel restrictions due to the Covid pandemic, so they were in Norway and could not get to the United States much less their residence in Stone County; and that they were not receiving mail addressed to their Stone County residence (Dkt. No. 30, ¶ 14).

> 11. That on or about May 4, 2021 plaintiff Ase Gro Lindland sent an email to defendant Janet Nesbitt asking defendant to help her out with the home insurance because the bill was not sent to Norway, and she did not have it; that in that email, she gave defendant Janet Nesbitt the name of the current insurance carrier, their policy number, and their credit card number so that defendants could pay their premium; that additionally plaintiff Ase Gro Lindland was not sure that she could make an online payment directly from Norway." (Dkt. Nos. 5, ¶ 19; 30, ¶ 14; 33, ¶ 11; 36, ¶ 11).

> 12. That defendant Janet Nesbitt assumed the duty to pay plaintiffs' premiums and made two payments on the insurance premium with plaintiffs' credit card (Dkt. Nos. 5, ¶ 20; 36, ¶ 12; 38, ¶ 12).

> 13. That payments were made by defendants on the homeowners insurance company by two credit card payments on May 4, 2021, one in the amount of $726.00 and one in the amount of $725.00; and that defendants said this paid for a year's worth of coverage; that in fact defendants had only paid for 6 months of coverage (Dkt. Nos. 13, ¶ 13; 28, ¶ 13; 30, ¶ 14; 33, ¶ 13; 36, ¶ 13).

> 14. That defendant Janet Nesbitt, in email exchanges later that day, negligently told plaintiff Ase Gro Lindland that she had paid the premiums for one year rather than the six (6) months premium which she actually paid (Dkt. Nos. 5, ¶ 21; 15, ¶ 2; 13, ¶ 13; 15, ¶ 6; 28, ¶ 14; 30, ¶ 14).

The Consent Judgment found that Stone County Insurance negligently failed to advise USLI of a $78.00 bill for a premium (Dkt. No. 15, ¶ 7). The Consent Judgment found that Stone County Insurance negligently failed to inform USLI of an overdue notice so that USLI might arrange a means to make the payment (*Id*., ¶ 8).

The Consent Judgment found that on or about May 5, 2021, Metropolitan Property and Casualty Insurance Company sent a bill requesting a $78.00 payment which they said would be due by May 25, 2021; that this statement was sent to plaintiffs' address in Stone County; that they did not receive it; that it was not in their mailbox when they finally were able to get back to the United States and their residence; and that a copy of this notice was sent to defendants which defendants negligently failed to advise plaintiffs (Dkt. Nos. 13, ¶ 14; 28, ¶ 14).

The Consent Judgment also found that at some time prior to October 27, 2021, Farmers Insurance or Metropolitan Property and Casualty Insurance Company mailed a notice to plaintiffs at their Stone County residence address stating that payment for the second six months of the term of the policy was overdue and that the policy would be cancelled and terminated unless payment was received on or before 12:01 a.m. on October 27, 2021; that plaintiffs did not receive this notice in Norway nor was the notice in their mailbox when they returned to the United States at their residence in Stone County; defendants were sent a copy of the said notice and negligently failed to inform plaintiffs of this notice so that plaintiffs might arrange a means to make this payment (Dkt. Nos. 13, ¶ 14; 28, ¶ 14)

The Consent Judgment states that the Lindlands' insurance policy expired, cancelled, or terminated on October 27, 2021 (Dkt. Nos. 5, ¶ 22; 33, ¶ 14; 36, ¶ 14; 38, ¶ 14).). The Consent Judgment found that a fire occurred at the Lindlands' home on March 30, 2022 (Dkt. No. 5, ¶ 23). The Consent Judgment found that the Lindlands' homeowners' insurer denied coverage for the

fire "because the policy had been cancelled on October 27, 2021, for nonpayment of the second six months premium." (*Id.*, ¶ 24; Dkt. Nos. 33 ¶ 15; 36, ¶ 15; 38, ¶ 15).  The Consent Judgment found "that as a proximate cause of [Stone County Insurance's] negligence, [the Lindlands] suffered damages in the loss of their home in the amount of $334,000.00, the amount of coverage for damage to the home; $176,472.00 for the loss of their personal property, and $8,100.00 for cost of accommodations which they had to pay when they visited Stone County after the fire loss; that additionally plaintiffs were entitled to prejudgment interest at the rate of 6% per annum from March 30, 2022, the date of the fire loss, until the date of this judgment or the sum of $68,110.52." (Dkt. Nos. 5, ¶ 25; 33, ¶ 26; 36, ¶ 16; 38, ¶ 16).  The Consent Judgment found "that [the Lindlands] are entitle [sic] to a total judgment from and against defendant Stone County Insurance Agency, Inc. in sum of $586,682.52." (Dkt. No. 5, ¶ 26).

### E.    The Assignment

A copy of the assignment from Stone County Insurance to the Lindlands is attached to the Lindlands' statement of facts as Exhibit "H." (Dkt. No. 30, at 14; Dkt. No. 38, ¶ 19; *see also* Dkt. No. 36, ¶¶ 17–18).

The assignment provides:

<u>**ASSIGNMENT**</u>

For valuable consideration, Stone County Insurance Agency, Inc. sells, transfers, assigns, and conveys to Ase Gro Lindland and Olav Lindland, their heirs and assigns, all of their claims, demands, causes of action, right, title, and interest of Assignor in and to a policy of liability insurance issued by United States Liability Insurance Company, Policy No. IAE1554936A, reserving only from said assignment its right to sue for, collect, and receive payment from United States Liability Insurance Company for breach of its duty to defend Assignor in *Lindland v. Stone County Insurance Agency et al*, Stone County Case No. 69CV-23-12 and its contractual and statutory rights for collection of its costs of defense and for the tort of bad faith. Assignor specifically assigns to Assignee all rights to sue for, collect, and receive payment under its liability coverage in order to collect Assignee's judgment against Assignor including those contractual rights and

statutory rights for enforcing and collecting through this policy of liability insurance.

(Dkt. No. 30, at 14).

## II.    Standard Of Review

### A.    Summary Judgment

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."); *UnitedHealth Group Inc. v. Executive Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Federal Rule of Civil Procedure 56 and noting that summary judgment is proper if there is no genuine issue of material fact for trial).

Under such circumstances, the moving party is entitled to judgment as a matter of law. *Celotex Corp*., 477 U.S. at 322.  "In ruling on a motion for summary judgment, '[t]he district court must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial.'"  *Tuttle v. Lorillard Tobacco Co*., 377 F.3d 917, 924 (8th Cir. 2004) (internal citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Johnson Regional Medical Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

Parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### B.    Declaratory Judgment

USLI filed the instant lawsuit requesting a declaratory judgment (Dkt. No. 1, at 9). The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction," subject to some exceptions not at issue here, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

"There is no clear-cut standard to use in determining whether a court should exercise its discretion to grant declaratory relief." *Bd. of Regents for Nw. Mo. St. Univ. v. MSE Corp.*, Case No. 90-0125-cv-W-9, 1990 WL 212098, at *2 (W.D. Mo. Nov. 20, 1990). The question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). In general, courts should exercise their discretion in such a way as "to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief . . . . The actuality of the plaintiff's need for a declaration of his rights is therefore of decisive importance." *Eccles v. People's Bank of Lakewood Village, Cal.*, 333 U.S. 426, 431–32 (1948).

### III.    USLI's Motion For Summary Judgment

USLI requests that the Court grant it summary judgment on its complaint for declaratory judgment because it asserts that all claims asserted by the Lindlands against Stone County Insurance in the underlying lawsuit are excluded by Exclusion D in the Policy.  Specifically, in the complaint, USLI asserts that it is entitled to a declaratory judgment that coverage is excluded and that it owes no duty to defend or indemnify Stone County Insurance because:

> [t]he underlying lawsuit and Consent Judgment are a Loss or Claim Expenses in connection with a Claim against an Insured arising out of, directly or indirectly resulting from or in consequence of or in any way involving the failure to pay money because the Lindlands allege that Stone County Insurance assumed and had a duty to pay the Lindlands' homeowners insurance premiums but failed to pay the Lindlands' homeowners insurance premiums such that the Lindlands suffered damages. . . .

(Dkt. No. 1, ¶ 36).

### A.    Standard For Interpretation Of Insurance Policies

A federal district court sitting in diversity applies its forum state's substantive law. *Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*, 509 F.3d 512, 515 (8th Cir. 2007).  State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship, as it is in this case.  *Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. 2012) (citing *Langley v. Allstate Ins. Co.,* 995 F.2d 841, 844 (8th Cir.1993)).

In Arkansas, the duty to defend under an insurance policy arises when there is a possibility that the injury or damage may fall within the policy coverage.  *Scottsdale Ins. Co. v. Morrowland Valley Co., LLC.*, 411 S.W.3d 184, 190–91 (Ark. 2012); *Cornerstone Nat'l Ins. Co. v. Rodriguez*, Case No. 5:20-cv-05064, 2021 WL 141699, at *3 (W.D. Ark. Jan. 14, 2021).  Generally, the "pleadings against the insured determine the insurer's duty to defend."  *Scottsdale*, 441 S.W.3d at 190–91.  To determine if a duty to defend arises, the "language in the contract from which the

purported duty arises" is examined. *Id.* The duty to defend is broader than the duty to indemnify, and the duty to defend "arises when there is a possibility that the injury or damage may fall within the policy coverage." *Murphy Oil USA, Inc. v. Unigard Sec. Ins. Co.*, 61 S.W.3d 807, 812–13 (Ark. 2001) (citing *Home Indem. Co. v. City of Marianna*, 727 S.W.2d 375 (Ark. 1987)). Conversely, where there is no possibility that the damage alleged in the complaint may fall within the policy coverage, there would be no duty to defend. *Murphy Oil USA, Inc*. 61 S.W.3d at 813 (citation omitted).

After it is determined that coverage exists, then the Court must determine if exclusionary language within the policy eliminates the coverage. *Deschner v. State Farm Mut. Auto. Ins. Co.*, 290 S.W.3d 6, 9 (Ark. 2008) (citing *McGrew v. Farm Bureau Mut. Ins. Co.,* 268 S.W.3d 890, 895 (Ark. 2007)). "The insurer has the burden of proving an exclusion." *Arkansas Farm Bureau Ins. Fed'n v. Ryman,* 831 S.W.2d 133, 134 (Ark. 1992). Exclusions must be expressed in clear and unambiguous language. *Id.* Courts "will not rewrite the terms of an insurance contract under the rule of strict construction against the insurer so as to bind the insurer to a risk that the contract plainly excluded and for which it was not paid." *Scottsdale Ins. Co.*, 411 S.W.3d at 191 (citing *Essex v. Holder,* 261 S.W.3d 456, 458 (2007)). If language is unambiguous, the plain language of the policy will be used. *McGrew*, 268 S.W.3d at 895 (citing *Elam v. First Unum Life Ins. Co.*, 57 S.W.3d 165, 169 (2001)).

Further, if the language of a policy is unambiguous, then the Court need not resort to rules of construction to ascertain the meaning of the insurance policy. The Court must interpret the policy language in its plain, ordinary, and popular sense. *McGrew*, 298 S.W.3d at 894–895 (citing *Norris v. State Farm Fire & Casualty Co.,* 16 S.W.3d 242, 244 (Ark. 2000)). "[W]hen policy language is clear and unambiguous, the court should decide, as a matter of law, the construction."

18

*Nat. Life & Accident Ins. Co. v. Abbott*, 455 S.W.2d 120 (Ark. 1970).  The Arkansas Supreme Court has explained, "[w]hen construing insurance policies, this court adheres to the rule that, where terms of the policy are clear and unambiguous, the policy language controls, and absent statutory strictures to the contrary, exclusionary clauses are generally enforced according to their terms."  *McSparrin v. Direct Ins.*, 283 S.W.3d 572, 574 (Ark. 2008) (citing *Smith v. Shelter Mut. Ins. Co.,* 937 S.W.2d 180 (Ark. 1997)).  "Arkansas courts have not required insurers to show proximate cause as a condition of enforcing exclusion clauses."  *Fulton v. Beacon Nat. Ins. Co.*, 416 S.W.3d 759, 763 (Ark. Ct. App. 2012) (citing *Castaneda v. Progressive Classic Ins. Co.,* 166 S.W.3d 556 (Ark. 2004); *W. Memphis Flying Serv., Inc. v. Am. Aviation & Gen. Ins. Co.,* 219 S.W.2d 215 (Ark. 1949); *Planters Mut. Ins. Ass'n of Ark. v. Dewberry,* 62 S.W. 1047 (Ark. 1901)).

### B.  Analysis

#### 1.  Duty To Defend

USLI maintains that it had and has no duty to defend in this case.  As for the duty to defend, the Policy states:

II.    INSURING AGREEMENTS

. . .

B.    The **Company** has the right and duty to defend any **Claim** to which this Insurance applies, even if the allegations of the **Claim** are groundless, false or fraudulent.

(Dkt. No. 5-1, at 5).

Specifically, at issue here is whether Exclusion D of the Policy applies under the circumstances to excuse USLI from its duty to defend Stone County Insurance in the underlying lawsuit.  Exclusion D provides:

IV.    EXCLUSIONS

19

> The **Company** shall not be liable to make payment for **Loss** or **Claim Expenses** in connection with any **Claim** made against an **Insured** arising out of, directly or indirectly resulting from or in consequence of or in any way involving:
>
> ...
>
> D.    the commingling of, or inability or failure to pay, collect, safeguard or return any money;

(Dkt. No. 5, ¶ 3).

The Policy defines "Claim" to include "any judicial or administrative proceeding initiated against any **Insured** seeking to hold such **Insured** responsible for a **Wrongful Act**, including any appeal therefrom." (*Id*.).

Here, Stone County Insurance specifically denies that there is ambiguity in Exclusion D (Dkt. No. 16, at 8) ("[t]o the extent there is any ambiguity in what failure to make a payment means, which there isn't . . .")).  The Lindlands do not allege any ambiguity in Exclusion D of the Policy.  Instead, Stone County Insurance argues that Exclusion D "is not applicable and did not relieve USLI of its duty to defend." (Dkt. No. 16, at 8).

As set forth above, under Arkansas law when there is unambiguous exclusionary language in a policy, such as Exclusion D, the Court must enforce it.  This is true regardless of proximate cause between the exclusion and the loss.  *See Fulton*, 416 S.W.3d at 762 ("Arkansas courts have not required insurers to show proximate cause as a condition of enforcing exclusion clauses.").

Because the Policy is not ambiguous, the plain language controls, and Exclusion D excludes claims "arising out of, directly or indirectly resulting from or in consequence of or in any way involving . . . the comingling of, or inability or failure to pay, collect, safeguard or return any money" (Dkt. No. 5, ¶ 3).  *See Elam,* 57 S.W.3d at 169 (determining that if the policy's language is unambiguous, the plain language controls and that policy language is only ambiguous "if there

is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation."). The Court looks to the "pleadings against the insured" to determine whether USLI has a duty to defend as required under Arkansas law. *See Scottsdale*, 441 S.W.3d at 190–91. Arkansas Rule of Civil Procedure 7, like Federal Rule of Civil Procedure 7, defines "pleading" to include a complaint; answer; counterclaim; reply to a counterclaim; answer to a cross-claim, if the answer contains a cross-claim; a third party complaint; and a third party answer. Ark. R. Civ. P. 7(a); *see also* Fed. R. Civ. P. 7(a).

Here, the Lindlands filed the underlying Complaint against Stone County Insurance alleging that they had a "long-standing business relationship" with Stone County Insurance through which the Lindlands obtained homeowners insurance for their Arkansas home and "that it was [their] habit and custom to take [their] credit card to [Stone County Insurance] for payment of the policy premiums over the years." (Dkt. No. 5-2, ¶¶ 5–6). The Lindlands further allege in the underlying Complaint that, on May 4, 2021, Ase Gro Lindland sent Stone County Insurance her credit card number so that Stone County Insurance could pay the Lindlands' insurance premiums (*Id*., ¶ 11). Stone County Insurance, through their agent, servant, or employee, Ms. Nesbitt, made two payments on the Lindlands' homeowners premiums with the Lindlands' credit card (*Id*., ¶ 11). After making the payments, Stone County Insurance told the Lindlands that it had paid the homeowners insurance premiums for one year (*Id*., ¶ 12). Stone County Insurance in fact only paid six months of homeowners insurance premiums, failed to pay the second six months of homeowners insurance premiums, and failed to inform the Lindlands of the nonpayment (*Id*., ¶¶ 12–13). The Lindlands contend in the underlying Complaint that a fire occurred at the Lindlands' Arkansas home on March 30, 2022, and their homeowners' insurer denied coverage for their claim

for damages from the fire because the Policy had been cancelled on October 27, 2021, for nonpayment of the second six months premium (*Id.*, ¶¶ 18–20).

In Count 1 of the underlying Complaint, the Lindlands alleged that Stone County Insurance and Ms. Nesbitt assumed a duty to pay the premiums on the Lindlands' homeowners insurance policy using their credit card; that Stone County Insurance failed to use ordinary care and failed to pay the second six months of premiums but misrepresented to the Lindlands that defendants had paid a year of premiums; that additionally defendants failed to use ordinary care to later pay the second six months of premiums after one bill and cancellation notice were received; and further failed to inform the Lindlands that these second six months premiums had to be paid or the policy would be cancelled and the Lindlands would have no insurance coverage (*Id.*, at 7, ¶¶ 25–27).  In Count 2 of the underlying Complaint, the Lindlands allege that an oral contract was created between the Lindlands and Stone County Insurance for Stone County Insurance to pay plaintiffs' premiums using plaintiffs' credit card as a means for payment but further allege that Stone County Insurance breached the oral contract by failing to pay six months of premiums after advising the Lindlands that Stone County Insurance had paid a year of premiums (*Id.*, ¶¶ 28–29).

USLI is entitled to summary judgment as to the duty to defend because the Complaint in the underlying lawsuit involved a loss suffered by the Lindlands due to Stone County Insurance's failure to pay premiums, which brings the case within the plain language of Exclusion D.  As a result, USLI did not have a duty to defend Stone County Insurance in the underlying lawsuit.

As supported by the plain language in the underlying Complaint, the Lindlands' claims of negligence and breach of contract arose out of Stone County Insurance's failure to pay the Lindlands' premiums resulting in the cancellation of the Lindlands' homeowners insurance policy for non-payment of the second six months of premiums.

22

Stone County Insurance and the Lindlands argue that the underlying Complaint alleges other wrongful acts by Stone County Insurance and Ms. Nesbitt, which do not have to do with failure to pay (Dkt. No. 16, at 1–2). Stone County Insurance and the Lindlands assert that the underlying Complaint contained allegations of failure to inform the Lindlands because of Ms. Nesbitt telling Ase Gro Lindland that she had paid the premiums for one year rather than six months; because Stone County Insurance failed to advise the Lindlands of the May 5, 2021, $78.00 bill; and because of Stone County Insurance's failure to inform the Lindlands of the subsequent overdue notice (Dkt. Nos. 16, at 2; 18, at 2–6). The only duty alleged in the underlying Complaint, however, was a duty to pay the premiums (Dkt. No. 5-2, at 7). Based on the language of the underlying Complaint, the Lindlands did not allege a duty to inform in the underlying Complaint (Dkt. No. 5-2).

Additionally, Stone County Insurance and the Lindlands' arguments regarding Stone County Insurance's failure to advise the Lindlands of premium invoices and Stone County Insurance's misrepresentations that it paid the premium for one year, when it only paid the premium for six months, fail under Arkansas law. To the extent that the underlying Complaint is alleging that Stone County Insurance was negligent for failing to advise of the premium invoices or misrepresenting to the Lindlands the payments due on the insurance premiums, Arkansas law does not recognize a tort of negligent misrepresentation. *See Curtis Lumber Co v. La. Pac. Corp.*, 618 F.3d 762, 774 n..3 (8th Cir. 2010). Moreover, "[i]n determining duties an insurance agent owes its clients, the Arkansas Supreme Court has consistently applied what it described as a 'long established rule placing a responsibility on the insured to educate himself concerning matters of insurance coverage.'" *I Square Management, LLC v. McGriff Insurance Services, Inc.*, 52 F.4th 1028, 1031 (8th Cir. 2022) (citing *Stokes v. Harrell*, 711 S.W.2d 755, 756 (Ark. 1986); *Scott-Huff*

*Ins. Agency v. Sandusky*, 887 S.W.2d 516, 517 (Ark. 1994)).  The Arkansas Supreme Court, in

*Stokes v. Harrell*, recognized that "absent a special relationship, an agent's duty does not include

an affirmative, continuing obligation to inform an insured regarding the availability or sufficiency

of insurance coverage."  *Buelow v. Madlock*, 206 S.W.3d 890, 893 (Ark. Ct. App. 2005) (citing

*Stokes*, 711 S.W.2d 755).  However, the *Stokes* court immediately signaled that it was skeptical

about the special-relationship exception, even after acknowledging it.  *Stokes*, 711 S.W.2d 755.

Moreover, as the Eighth Circuit Court of Appeals explained in *I Square Management*, an analysis

of Arkansas cases leaves the overall impression that the Arkansas Supreme Court takes a dim view

of what is called the special-relationship exception, though Arkansas courts have been hesitant to

say that it could never apply.  52 F.4th at 1031-32.

Under the facts before the Court, the Court determines that Stone County Insurance and

the Lindlands appear to be attempting to transform the negligent failure to pay theory that was

alleged in the underlying Complaint into a negligent failure to inform theory to fall outside of

Exclusion D.  Even if this Court considers the additional statements in the Consent Judgment

seemingly included to aim toward this goal, however, Stone County Insurance's liability still arises

out of its failure to pay the Lindlands' homeowners insurance premiums (*See* Dkt. No. 5-3, ¶ 20

(Stone County Circuit Court Consent Judgment determining that "notice . . . was sent to plaintiffs

. . . denying coverage because the policy had been cancelled on October 27, 2021 for nonpayment

of the second six months premium.").  Stone County Insurance's duty to pay the premiums was

alleged in the underlying Complaint and was found in the Consent Judgment  (Dkt. Nos. 5-2, at 7

¶ 25–29; 5-3, ¶ 12, 20).  The language in Exclusion D, the facts asserted in the underlying

Complaint, and the statements in the Consent Judgment finding that it was Stone County

Insurance's failure to pay the premiums that resulted in the cancellation of the Lindlands' Policy

make clear to the Court that Stone County Insurance's liability in the underlying lawsuit arises out of the failure to pay.

Accordingly, Exclusion D applies, and USLI did not have a duty to defend Stone County Insurance in the underlying lawsuit.

### 2.    Estoppel

Stone County Insurance and the Lindlands argue that the fact that USLI provided Stone County Insurance defense counsel in the underlying lawsuit for a period of time estops USLI from asserting Exclusion D in this declaratory judgment action, but this is not the case under Arkansas law (Dkt. Nos. 16, at 9–10; 18, at 10–11).

Arkansas law regarding estoppel is that it may not "'be asserted to extend coverage under a contract in which it was excluded by specific language.'" *Pine Bluff Sch. Dist. v. Ace Am. Ins. Co.*, 984 F.3d 583, 594 (8th Cir. 2020) (quoting *Harasyn v. St. Paul Guardian Ins. Co.*, 75 S.W.3d 696, 702 (Ark. 2002)). In other words, estoppel "is not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom." *Id.* (quoting *Peoples Protective Life Ins. v. Smith*, 514 S.W.2d 400, 406–07 (Ark. 1974)).

Here, the Court has determined that the Policy specifically excluded risks for Stone County Insurance's failure to pay. Under Arkansas law, the doctrine of estoppel cannot be applied to extend USLI's duty to defend Stone County Insurance in the underlying lawsuit for failure to pay because it was specifically excluded by the Policy. This is true regardless of the time that USLI defended the underlying lawsuit and the time USLI took to decline coverage and initiate this declaratory judgment action. *Columbia Ins. Grp., Inc. v. Arkansas Infrastructure, Inc.*, Case No. 4:14-cv-00512 SWW, 2016 WL 6832629, at *4 (E.D. Ark. Nov. 18, 2016) ("The fact that Columbia defended the case does not change the terms of the policy. Defendants do not cite and

the Court is unaware of any Arkansas case holding that an insurer's defense of its insured without a reservation of rights or non-waiver agreement operates as a waiver of any future claim of non-coverage.").

Further, the doctrine of estoppel does not apply to the Lindlands because the Lindlands did not rely on USLI's conduct in defending Stone County Insurance, and the Lindlands were not injured because of their reliance. Further, Stone County Insurance did not assign its right to pursue a breach of a duty to defend claim to the Lindlands (*See* Dkt. No. 30, at 14).

### 3.    Duty To Indemnify

"Insurers have a duty to indemnify if the proved facts show an event occurred for which coverage applies.  The duty to indemnify turns not on the pleadings but on the actual facts and circumstances giving rise to liability in the underlying suit." *Berkley Assurance Co. v. Springdale Pub. Sch.*, Case No. 5:23-cv-05042, 2024 WL 666500, at *9 (W.D. Ark. Feb. 17, 2024) (citation omitted).  Here, the fact that USLI has no duty to indemnify Stone County Insurance is established from the factual determinations made by the Circuit Court of Stone County, Arkansas, in the Consent Judgment.

On June 19, 2024, the Circuit Court of Stone County, Arkansas, entered a Consent Judgment in favor of the Lindlands against Stone County Insurance in the underlying lawsuit (Dkt. No. 5-3).  The Stone County Circuit Court found that the Lindlands and Stone County Insurance had a long-standing business relationship where Stone County Insurance obtained the Lindlands' insurance and did so because the Lindlands would take their credit card to Stone County Insurance for Stone County Insurance to pay the Lindlands' policy premiums.  Ase Gro Lindland sent Stone County Insurance her credit card number, so Stone County Insurance Company could pay the premiums.  Further, in the Consent Judgment, the Stone County Circuit Court concluded that

"Janet Nesbitt assumed the duty to pay [the Lindlands'] premiums and made two payments on the insurance premiums with [the Lindlands'] credit card" (Dkt. No. 5-3, ¶ 12).  The Circuit Court also determined that Ms. Nesbitt made two payments on the insurance premium with the Lindlands' credit card (*Id.*).  In the Consent Judgment, the Circuit Court also found that Stone County Insurance said this paid for a year's worth of coverage, but in fact defendants had only paid for six months of coverage (*Id.*, ¶ 13).

Specifically, the Circuit Court determined in the Consent Judgment that the Lindlands' homeowners' insurer denied coverage for the fire "because the policy had been cancelled on October 27, 2021 for nonpayment of the second six months premium." (*Id.*, ¶ 20).  The Circuit Court found that as a proximate cause of defendants' negligence, the Lindlands suffered damages in the loss of their home in the amount of $334,000.00 for the amount of coverage for damage to the home; $176,472.00 for the loss of their personal property; and $8,100.00 for cost of accommodations which the Lindlands had to pay when they visited Stone County after the fire loss; and that additionally the Lindlands were entitled to prejudgment interest at the rate of 6% per annum from March 30, 2022, the date of the fire loss until the date of the Consent Judgment or the sum of $68,110.52 (*Id.*, ¶ 21).  The total judgment from and against Stone County Insurance is the sum of $586,682.52 (*Id.*, ¶ 22).

These facts as determined by the Circuit Court in the Consent Judgment support that the loss suffered by the Lindlands was due to Stone County Insurance's failure to pay premiums, which brings the underlying lawsuit within Exclusion D.  For these reasons, USLI does not have a duty to indemnify under the Policy.  *See also Murphy Oil*, 61 S.W.3d at 813 (determining that where there is no duty to defend, there is generally no duty to indemnify).

### C.    Conclusion

After reviewing all the evidence in the record before the Court in the light most favorable to the non-moving parties, Stone County Insurance and the Lindlands, the Court grants USLI's motion for summary judgment (Dkt. No. 4).  The Court declares that USLI does not owe Stone County Insurance a duty to defend it against the claims asserted by the Lindlands in the underlying lawsuit and that USLI does not owe a duty to indemnify for claims asserted by the Lindlands in the underlying lawsuit or to pay the Consent Judgment entered in the underlying lawsuit due to Exclusion D.

### IV.    Stone County Insurance's Motion for Summary Judgment

Stone County Insurance moves for summary judgment on its counterclaim asserting that USLI breached its contractual obligation under the Policy to defend Stone County Insurance in the underlying lawsuit and breached its contractual obligation to pay the Consent Judgment entered against Stone County Insurance in the underlying lawsuit (Dkt. No. 27, at 1).  USLI initially provided a defense to Stone County Insurance by retaining the law firm of WDT&C and to defend Stone County Insurance in the underlying lawsuit.

### A.    Standard

To state a cause of action for breach of contract under Arkansas law, Stone County Insurance "need only assert the existence of an enforceable contract between the plaintiff and defendant, the obligation of the defendant thereunder, a violation by the defendant, and damages resulting to the plaintiff from the breach."  *Smith v. Eisen*, 245 S.W.3d 160, 168–69 (Ark. Ct. App. 2006) (citing *Rabalaias v. Barnett,* 683 S.W.2d 919 (Ark. 1985)).

### B.    Analysis

#### 1.    Breach Of The Duty To Defend

Stone County Insurance filed a counterclaim against USLI in which Stone County Insurance asserts that USLI breached its contractual obligations to Stone County Insurance and Janet Nisbett by withdrawing the defense owed to them in the underlying lawsuit (Dkt. No. 11, ¶ 10).  Stone County Insurance further asserts in its counterclaim that USLI breached its contractual agreements with Stone County Insurance by refusing to pay the Consent Judgment (*Id.*, ¶ 11).

On March 28, 2023, the law firm of WDT&C filed an answer for Stone County Insurance and Ms. Nesbitt (Dkt. Nos. 13, ¶ 5; 28, ¶ 5; 33, ¶ 6).  On May 8, 2024, the law firm of WDT&C filed a motion to withdraw as counsel in accordance with the instructions of USLI (Dkt. Nos. 13, ¶ 11; 28, ¶ 11; 33, ¶ 12).  The Stone County Circuit Court granted WDT&C's motion to withdraw on May 15, 2024 (*Id.*).

Stone County Insurance argues that Exclusion D is not applicable (Dkt. No. 27, at 6), and Stone County Insurance argues that Exclusion D did not relieve USLI of its obligation to defend Stone County Insurance in the underlying lawsuit.  Stone County Insurance specifically contends that the Lindlands' alleged claims of "negligence" in the underlying lawsuit against Stone County Insurance arising from its failure to advise the Lindlands of the May 5, 2021, $78.00 bill (*Id.*, at 9), as well as Stone County Insurance's failure to inform the Lindlands of the subsequent overdue notice, do not involve making a payment under Exclusion D (*Id.*, at 10).  Stone County Insurance further argues that nothing in the Policy excludes coverage for the act of negligently advising a customer that the customer has insurance coverage for one year, when in fact the customer only has coverage for six months (*Id.*).  Stone County Insurance argues that the underlying Complaint did not involve a claim of negligent misrepresentation but that, even if it had, USLI still had a duty

to provide Stone County Insurance a defense because under the Policy USLI was required to provide a defense "even if the allegations of the Claim are groundless, false or fraudulent . . ." (*Id.*, at 7).

As set forth above, under Arkansas law when there is unambiguous exclusionary language in a policy, such as Exclusion D, it must be enforced. This is true regardless of proximate cause between the exclusion and the loss. *See Fulton*, 416 S.W.3d at 762 ("Arkansas courts have not required insurers to show proximate cause as a condition of enforcing exclusion clauses."). Here, Exclusion D applies to any claim against an insured "arising out of, directly or indirectly resulting from or in consequence of or in any way involving. . ." "the failure to pay. . . ." (Dkt. No. 5, ¶ 3). The Supreme Court of Arkansas interprets terms such as "arising out of" in exclusions broadly and "requires only a 'but for' causal relation or connection." *Kerr v. Gotham Ins. Co.*, Case No. 4:18-cv-00423 SWW, 2019 WL 5268625, at *7 (E.D. Ark. Oct. 17, 2019) (citing *Hartford Fire Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 574 S.W.2d 265, 267 (Ark. 1978)). Stone County Insurance cites to cases that it asserts require a narrower interpretation of the language "arising out of," but the cases cited by Stone County Insurance are cases analyzing exclusions of coverage for bodily injury arising out of the use of an automobile and that is not the type of policy that is at issue here (Dkt. No. 37, at 6–7). *See Crossett Paper Mills Emps. Fed Credit Union v. Cumis Ins. Soc., Inc.*, 476 F.3d 578, 580–81 (8th Cir. 2007) (determining exclusion of coverage for a bodily injury arising out of the use of an automobile).

Here, there is an undisputed causal link between the failure to pay the Lindlands' insurance premium and the Lindlands' loss. As alleged in the underlying Complaint, Stone County Insurance assumed the duty to pay the Lindlands' homeowners' insurance premiums and made two payments (Dkt. No. 5-2, ¶ 11). Despite assuming the duty to pay the premiums, Stone County Insurance

failed to pay the additional six months' worth of premiums, and the Policy was cancelled on October 27, 2021, for nonpayment of the second six months of premiums (*Id.*, ¶ 20). As a result, the Lindlands' were damaged when the homeowners' insurer denied the Lindlands' fire damage claim (Dkt. No. 5-3, ¶ 20). There is a causal link between Exclusion D – the failure to pay – and the loss experienced by the Lindlands as required to exclude coverage under Arkansas law. USLI did not breach its duty to Stone County Insurance by failing to defend it because Exclusion D applied, and Stone County Insurance is not entitled to summary judgment on its counterclaim.

Stone County Insurance argues that claims in the underlying Complaint assert negligence and have nothing to do with an alleged failure by Stone County Insurance to make a payment, thereby triggering a duty to defend under the Policy. To prevail on a negligence theory under Arkansas law, however, a plaintiff must prove that defendant owed it a duty. *See I Square Management, LLC*, 52 F.4th at 1031 (citation omitted). There is no other duty alleged in the underlying Complaint other than the "duty to pay the premiums on plaintiffs' homeowners insurance policy" (Dkt. No. 5-2, at 7).

Further, as set forth in the Consent Judgment the reason that the Lindlands' homeowners insurer denied coverage on Lindlands' fire loss claim was "for nonpayment of the second six months premium," a duty that Stone County Insurance had undertaken. The Lindlands' coverage was not denied because of Stone County Insurance's failure to inform the Lindlands of premium notices or because Stone County Insurance failed to advise the Lindlands of notices it received (Dkt. No. 5-3, ¶ 20). The Lindlands' damage was directly caused by Stone County Insurance's failure to pay premiums after Stone County Insurance had assumed a duty to do so.

31

Based on the undisputed facts before the Court, Exclusion D applies, and it was not a breach of the contract for USLI to decline to defend Stone County Insurance in the underlying lawsuit.[1]

### 2.    Breach Of Duty To Indemnify

Stone County Insurance also asserts in its counterclaim that USLI breached its duty to indemnify Stone County Insurance by refusing to pay the Consent Judgment (Dkt. No. 11, ¶ 11). In its motion for summary judgment, Stone County Insurance argues that there are negligent acts that form the basis for the Consent Judgment that have nothing to do with Stone County Insurance's failure to "make a payment" (Dkt. No. 27, at 11–12).

The Court determines, based on the record before it, that Stone County Insurance's duty to indemnify claim fails because Stone County Insurance assigned its rights in the Consent Judgment to the Lindlands, and Stone County Insurance does not have standing to pursue this claim as a result of that assignment (Dkt. No. 30, at 14).  The Assignment provides that "[Stone County Insurance] specifically assigns to [the Lindlands] all rights to sue for, collect, and receive payment under its liability coverage in order to collect [the Lindland's] judgment against [Stone County Insurance] including those contractual rights and statutory rights for enforcing and collecting through this policy of liability insurance."  Accordingly, the Court denies Stone County Insurance's motion for summary judgment based on USLI's breach of its duty to indemnify Stone County Insurance by refusing to pay the Consent Judgment.  This claim properly belongs to the Lindlands as a result of the Assignment, the Lindlands raise the claim in their moving papers, and the Court analyzes the Lindlands' claim in this Order.

---

[1] Given that the Court concludes that Exclusion D applies and that it was not a breach of contract for USLI to decline to defend Stone County Insurance on the underlying Complaint, the Court declines to examine USLI's argument that Stone County Insurance has not demonstrated a right to summary judgment on its breach of contract claim due to a failure to bring forth evidence of the required element of damages (*see* Dkt. No. 34, at 10–11).

### C.    Conclusion

For all of these reasons, the Court denies Stone County Insurance's motion for summary judgment on its counterclaim (Dkt. No. 26).

### V.    The Lindlands' Motion For Summary Judgment

The Lindlands assert a counterclaim for breach of contract against USLI to collect the amount due on the Consent Judgment (Dkt. No. 10).  In the motion for summary judgment on their counterclaim, the Lindlands assert that the Court should grant them summary judgment because there is coverage for the Consent Judgment entered against Stone County Insurance in the underlying lawsuit, and USLI has breached its contract with Stone County Insurance and violated Arkansas Code Annotated § 23-89-101 by refusing to pay the judgment (Dkt. No. 31).

### A.    Standard

To state a cause of action for breach of contract under Arkansas law, the Lindlands "need only assert the existence of an enforceable contract between the plaintiff and defendant, the obligation of the defendant thereunder, a violation by the defendant, and damages resulting to the plaintiff from the breach." *Smith*, 245 S.W.3d at 168–69 (citing *Rabalaias v. Barnett,* 683 S.W.2d 919 (Ark. 1985)).

### B.    Analysis

The Lindlands seek summary judgment on the basis that the Policy lacks an applicable exclusion as applied to the underlying Complaint (Dkt. No. 32, at 8–11).  The Lindlands assert that Exclusion D is not applicable to excuse USLI from paying the Consent Judgment because three "separate claims" in the underlying Complaint make allegations of negligence which "have nothing to do with an alleged failure by Stone County Insurance to make a payment." (*Id*., at 9). The Lindlands argue that USLI breached its duty to indemnify Stone County Insurance or the

Lindlands for the Consent Judgment because none of the acts of negligence "have anything to do with a failure by Stone County Insurance to make a payment and are covered acts of negligence under the [USLI] policy." (*Id.*, at 11).

As set forth in detail above, Exclusion D applies to exclude coverage regardless of Stone County Insurance's failure to advise the Lindlands of premium invoices or the misstatements that it paid the full premium.

To the extent that the Lindlands argue that terms such as "arising out of" as used in Exclusion D should be construed narrowly, the Lindlands rely on cases previously cited by Stone County Insurance that are construing exclusions of coverage for bodily injury "arising out of the use of" an automobile (Dkt. No. 40, at 5–6). The Court finds these cases of limited use in construing the exclusion provision in this homeowners policy. The Court finds more persuasive the analysis in *Kerr*, 2019 WL 5268625, at *7, where the United States District Court for the Eastern District of Arkansas interpreted language in an errors and omission policy and determined that, "[t]he Supreme Court of Arkansas interprets the term 'arising out of' broadly and requires only a 'but-for' causal relation or connection." *Id.* (citing *Hartford Fire Ins. Co.*, 574 S.W.2d at 267).

To prevail on a negligence theory under Arkansas law, a plaintiff must prove that defendant owed it a duty. *See I Square Management, LLC*, 52 F.4th at 1031 (citation omitted). There is no other duty alleged in the underlying Complaint other than the "duty to pay." (Dkt. No. 5-2, at 7). Additionally, the only duty found by the Circuit Court in the Consent Judgment is the duty that Stone County Insurance assumed "to pay plaintiffs' premiums" (*Id.*, ¶ 12). The Circuit Court in the Consent Judgment found that the basis for the Lindlands' homeowners insurer's denial of the Lindlands' claim was because the Policy had been cancelled for "nonpayment of the second six

months premium." (Dkt. No. 5-3, ¶ 20).   Because the Consent Judgment determined that the Lindlands' loss occurred due to Stone County Insurance's failure to pay the second six months premium and because Exclusion D applies to exclude coverage for failure to pay, USLI did not breach its contractual obligation to Stone County Insurance under the Policy by failing to pay the Consent Judgment, and the Lindlands cannot prevail on their motion for summary judgment.

### C.    Conclusion

For all of these reasons, the Court denies the Lindlands' motion for summary judgment on their counterclaim for breach of contract for failure to pay the judgment (Dkt. No. 31).[2]

### VI.    Conclusion

The Court rules as follows:

1.    The Court grants USLI's motion for summary judgment (Dkt. No. 4).

2.    The Court declares that, due to Exclusion D in the Policy, USLI does not owe and has never owed Stone County Insurance a duty to defend it against claims asserted by the Lindlands in the underlying lawsuit.

3.    The Court declares that, due to Exclusion D in the Policy, USLI does not owe a duty to indemnify Stone County Insurance for claims asserted by the Lindlands in the underlying lawsuit or a duty to pay the Consent Judgment entered in the underlying lawsuit.

---

[2]  Based on allegations in the counterclaim, USLI argued in its response to the Lindlands' motion for summary judgment that the Lindlands do not have standing to assert allegations regarding any alleged failure to defend Stone County Insurance (Dkt. No. 35, at 11–12).  The Lindlands clarified in their reply that they are not claiming in their counterclaim any damages from USLI for failing to defend Stone County Insurance and that, under the Assignment, such a claim remains with Stone County Insurance (Dkt. No. 40, at 8–9).  Accordingly, the Court has not addressed a failure to defend claim when addressing the Lindlands' motion for summary judgment, as the Court understands that the Lindlands did not intend to raise a failure to defend claim in their counterclaim.

4.      The Court denies Stone County Insurance's motion for summary judgment on its counterclaim (Dkt. No. 26).

5.      The Court denies the Lindlands' motion for summary judgment on its counterclaim (Dkt. No. 31).

It is so ordered this 17th day of March, 2025.

_____
Kristine G. Baker
Chief United States District Judge